UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

AMERITOX, LTD., a Texas limited partnership,

    Plaintiff,

v.

MILLENNIUM LABORATORIES, INC., a California corporation,

    Defendant.

CASE NO.:

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES

Plaintiff Ameritox, Ltd. ("Ameritox") for its complaint against Defendant Millennium Laboratories, Inc. ("Millennium"), seeking damages, injunctive relief and other relief for false advertising, unfair competition, and unfair trade practices alleges as follows:

### NATURE OF ACTION

1. This is an action for injunctive relief, declaratory judgment and damages against Millennium for violations of the Lanham Act (15 U.S.C. § 1125, *et seq.*); Florida Common Law Unfair Competition, and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA").

### PARTIES

2. Ameritox is a limited partnership organized under the laws of Texas with its principal place of business at 300 East Lombard Street, Suite 1610, Baltimore, MD. Ameritox is a clinical laboratory in the business of testing specimens and monitoring results for health care providers who prescribe medications used to treat patients for chronic pain and addiction.

3. Upon information and belief, Millennium is a corporation organized under the laws of California with its principal place of business at 16981 Via Tazon, San Diego, California. Millennium a competitor of Ameritox in the business of testing specimens and monitoring the results for health care providers.

## JURISDICTION AND VENUE

4. This court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b), and has supplemental jurisdiction over the common law and state law claims asserted herein because they are so related to the claims in this action that arise under federal law as to constitute part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

5. Personal jurisdiction is proper before this Court because Defendant's actions place it within the reach of Florida's long arm statute. Specifically, pursuant to Fla. Stat. §§ 48.193(1)(a) and (b), Defendant operates, conducts, engages in and carries on business in Florida, and it has committed some of the tortious acts described below in the state of Florida.

6. Further, upon information and belief, personal jurisdiction is proper before this Court pursuant to Fla. Stat. § 48.193(2), in that Defendant engages in substantial and not isolated activity within Florida.

7. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the actions that form the basis of Ameritox's claims against Defendant occurred in this district. Venue is also proper in this judicial district because Defendant is subject to personal jurisdiction in this district and thus is deemed a resident hereof pursuant to 28 U.S.C. §§ 1391(b) and (c).

## GENERAL ALLEGATIONS

8. Ameritox and Millennium both test specimens and monitor results for health care providers, in Florida and elsewhere, who prescribe medications to treat patients for chronic pain and/or addiction. Because these drugs are susceptible to abuse by the patient or third parties, providers contract with companies such as Ameritox or Millennium to monitor drug levels in a patient. Monitoring drug levels in patients includes tracking test results over a period of time and sending periodic reports to providers. Providers typically refer specimens to the same laboratory over a period of time to benefit from the monitoring services provided by laboratories such as Ameritox and Millennium.

9. Ameritox and Millennium directly compete for market share in the urine drug testing and medication monitoring market in Florida and elsewhere.

10. Millennium, as a laboratory service provider, provides urine drug testing at the request of health care providers, including physicians. The success of Millennium's business model depends, at least in part, upon referrals from health care providers.

11. Upon information and belief, Millennium formed a business plan to increase its market share, revenue, and profits through an improper and illegal scheme.

12. Federal and Florida law prohibit companies such as Millennium from providing financial inducements and kickbacks to health care providers in order to induce the referral of business. These laws not only prohibit direct payments to health care providers as an inducement for the referral of business, but they also prohibit other forms of kickbacks, such as the provision of equipment, supplies, tests, services, and other benefits to the health care provider at no cost or at below fair market value.

13. Millennium has implemented a scheme of providing improper and unfair financial inducements to health care providers (described below in detail) that violate state and federal laws in an attempt to increase its market share. This scheme is intentionally misleading, fraudulent, deceptive, unfair and unconscionable.

14. Millennium's unfair and deceptive scheme of improper inducements and kickbacks involved, in part, an agreement with health care providers and patients not to collect payments, which Millennium is required by law to collect, in exchange for the referral of patients. The purpose of the scheme was to improperly induce, influence, and encourage health care providers to engage in business with Millennium by providing the health care providers and their patients with an improper financial benefit.

15. Millennium has developed corporate policies to provide incentives to patients and health care providers. Millennium's sales agents explicitly communicate that patients do not need to pay their deductibles and copayments if Millennium performs the patients' laboratory work.

16. In other words, Millennium bills Medicare, Medicaid or health insurance companies its full charges. However, unknown to Medicare, Medicaid or the patient's health insurance company, Millennium explicitly represents to patients that "provided that you send this [insurance] check to Millennium PROMPTLY, we will accept this payment as full and complete settlement of your account. **You will not be responsible for any additional charges, including co-pay and/or deductible amounts described on the [explanation of benefits].**" (emphasis added). *See* Exhibit A.

17. Millennium's scheme provides health care providers with a direct and improper financial inducement to use Millennium's services, and is contrary to Federal and Florida law.

18. Millennium has billed higher prices to health care insurers, the Medicare program, and the State of Florida's Medicaid program. Millennium knowingly waives deductibles and copayments from the patients and accepts a below-market price for its services.

19. Millennium's scheme constitutes a false claim and, as such, is an unfair method of competition or unfair or deceptive act or practice under the Unfair Insurance Trade Practices Act, Section 626.9541(u), Florida Statutes.

20. Millennium also engages in unfair competition and deceptive practices by providing health care providers with items and services for free or below the fair market value of such items and services to influence and induce the referrals of lab specimens to Millennium. The provision of items or services at no cost or below their fair market value constitutes a kickback in violation of Florida law, including, but not limited to, the Florida Clinical Laboratory Law, Chapter 483, Part I, Florida Statutes.

21. In its efforts to increase market share through the provision of improper financial inducements to health care providers, Millennium offers health care providers unfair and deceptive remuneration in the form of in-office chemical analyzers and supplies provided by a third party at no cost or below fair market value.

22. The in-office chemical analyzer and supplies allow a health care provider to perform and bill for certain specified testing of specimens in the health care provider's office. Thus, the health care provider profits from the analyzer and supplies provided by Millennium. The remaining tests on the specimens and all monitoring are performed by Millennium. Thus, Millennium profits from the tests referred by the health care providers receiving inducements.

23. Millennium offers health care providers in-office chemical analyzers with no capital outlay required from the health care provider.

24. Additionally, because a health care provider is not permitted to bill for tests performed with an in-office chemical analyzer unless or until the provider has obtained laboratory certification, Millennium offers health care providers a free laboratory certification course along with the use of consultant services at no cost or below their fair market value.

25. In exchange for its arrangement with the health care providers, Millennium expects (and communicated to its customers/health care providers) that all tests that cannot be performed in-office on the chemical analyzers will be sent to Millennium for testing and analysis.

26. Upon information and belief, Millennium knowingly engaged in the wrongful conduct with the purpose of providing improper and unfair financial inducements to health care providers.

27. As a direct and proximate result of the conduct of Millennium and its agents, Ameritox has been damaged in an amount to be determined at trial.

28. All conditions precedent to filing this action have occurred, been satisfied, waived or excused.

29. Plaintiff has retained undersigned counsel to bring this lawsuit and has agreed to pay it reasonable attorneys' fees and costs.

## COUNT I
### (FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A) *ET SEQ.*)

30. Ameritox hereby incorporates the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

31. Millennium has made false or misleading statements in commercial advertisements for its services in violation of the Lanham Act, 15 U.S.C. § 1125.

32. Millennium's statements are literally false and/or likely to deceive customers about the true nature, characteristics, and qualities of its services.

33. Millennium's false or misleading statements have already, and will continue, to influence purchasing decisions to the extent that customers choose Millennium's services instead of those offered by Ameritox.

34. Millennium's services are offered, advertised, and sold to customers throughout the country; therefore, the misrepresented services affect interstate commerce.

35. As a proximate and direct result of the wrongful and intentional actions of Millennium, Ameritox has been damaged in an amount to be proven at trial.

## COUNT II
### (FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT –INJUNCTIVE RELIEF)

36. Ameritox hereby incorporates the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

37. Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"), prohibits "unfair methods of competition," "unconscionable acts or practices," and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204.

38. The stated purpose of FDUTPA is to protect persons from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202.

39. As set forth in more detail above, Millennium engages in a pattern and practice of offering and providing inducements, kickbacks and other improper financial inducements to health care providers and health care consumers in exchange for the referral of business, in violation of Federal and Florida law.

40. Millennium implements these practices in Florida. Millennium, directly and through its agents, executes the scheme in Florida.

41. Through these practices, Millennium engages in unconscionable, deceptive or unfair acts or practices in the conduct of commerce. Millennium engages in these acts to retain a benefit for its dishonest conduct and to wrongfully disrupt Ameritox's business practices within the same market.

42. Ameritox has been aggrieved by the wrongful and intentional actions of Millennium.

## COUNT III
### (FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT – DAMAGES)

43. Ameritox hereby incorporates the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

44. FDUTPA prohibits "unfair methods of competition," "unconscionable acts or practices," and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204.

45. The stated purpose of FDUTPA is to protect persons from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202.

46. As set forth in more detail above, Millennium engages in a pattern and practice of soliciting and providing kickbacks and other improper financial inducements to health care providers and health care consumers in exchange for the referral of business, in violation of Federal and Florida law.

47. Millennium implements these practices in Florida. Millennium, directly and through its agents, executed the scheme in Florida.

48. Through these practices, Millennium engages in unconscionable, deceptive or unfair acts or practices in the conduct of commerce. Millennium engages in these acts to retain a benefit for its dishonest conduct and to wrongfully disrupt Ameritox's business practices within the same market.

49. As a proximate and direct result of the wrongful and intentional actions of Millennium, Ameritox has been damaged in an amount to be proven at trial.

## COUNT IV
### (COMMON LAW UNFAIR COMPETITION)

50. Ameritox hereby incorporates the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

51. Millennium has made false or misleading statements in commercial advertisements that constitute unfair competition in violation of Florida law.

52. Millennium's false or misleading statements have already influenced, and will continue to influence purchasing decisions to the extent customers choose Millennium's services instead of those offered by Ameritox.

53. As a proximate and direct result of the wrongful and intentional actions of Millennium, Ameritox has been damaged in an amount to be determined at trial.

## RELIEF REQUESTED

**WHEREFORE**, Ameritox respectfully requests that this Court

(a) Award judgment in its favor and against Millennium on all its Counts;

(b) Award damages in its favor and against Millennium;

(c) Enter declaratory and injunctive relief in its favor and against Millennium;

(d) Award Ameritox all profits derived by Defendant's wrongful acts complained of herein;

  (e) Award Ameritox all damages sustained by reason of the wrongful acts complained of herein in an amount not less than $75,000;

  (f) Award Ameritox treble the amount of Defendant's profits or actual damages suffered by Ameritox;

  (g) Award Ameritox punitive and exemplary damages against Defendant and in favor of Ameritox in an amount sufficient to deter and punish Defendant for its willful and wrongful acts;

  (h) Award Ameritox's costs incurred in this action;

  (i) Award Ameritox reasonable attorney fees pursuant to 15 U.S.C. § 1117(a) or, Fla. Stat. §501.2105;

  (j) Such other and further relief, in law or in equity, as this Court deems just and proper.

**JURY TRIAL DEMANDED ON ALL CLAIMS SO TRIABLE.**

Dated: April 8, 2011

*[signature]*
Margaret D. Mathews
Florida Bar No.: 348430
Richard H. Martin
Florida Bar No.: 579831
**AKERMAN SENTERFITT**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 Telephone
(813) 223-2837 Facsimile
margaret.mathews@akerman.com
richard.martin@akerman.com
*Attorneys for Plaintiff*

and

Of Counsel:
Michael R. Osterhoff
**K&L GATES LLP**
70 W. Madison St., Ste. 3100
Chicago, IL 60602-4207
(312) 807-4205 telephone
(312) 827-8190 facsimile
michael.osterhoff@klgates.com

Peter B. Bensinger, Jr.
**Bartlit Beck, Herman Palencha & Scott, LLP**
54 West Hubbard Street, Suite 300
Chicago, IL  60654
(312) 494-4426 Telephone
(312) 494-4440 Facsimile
peter.bensinger@bartlit-beck.com