**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AMERITOX, LTD.,

       Plaintiff,

v.                                     Case No.: 8:11-cv-775-T-24-TBM

MILLENNIUM LABORATORIES, INC.,

       Defendant.
_____/

## ORDER

This matter comes before the Court on Defendant Millennium Laboratories, Inc.'s ("Millennium") Motion to Dismiss Counts I, VI, and VII of Plaintiff Ameritox, Ltd.'s ("Ameritox") Third Amended Complaint.  (Doc. No. 101).  Ameritox filed a Response in Opposition (Doc. No. 118) to Millennium's motion.

On August 9, 2012, the Court directed Ameritox to file a supplemental brief that addressed, with citations to authority: "(1) whether a Lanham Act claim based on advertisements implicitly representing that the practices being promoted are legal, when in actuality they are not, is permissible; and (2) whether a court or agency of competent jurisdiction has clearly and unambiguously ruled that the specific billing practices that Millennium has promoted are illegal and that such law existed at the time that Millennium made the representations."  (Doc. No. 129 at 4–5).  Ameritox filed its supplemental brief on August 20, 2012.  (Doc. No. 130).

Upon review, and for the following reasons, Millennium's motion to dismiss is **GRANTED in part and DENIED in part**.

**I.**     **Background**

     **A.**     **Facts**

Ameritox is a clinical laboratory that engages in screening urine specimens for the presence of drugs. (Doc. No. 92 ¶8). Millennium is one of Ameritox's competitors in the industry. (Doc. No. 101 at 4). Healthcare providers contract with companies like Ameritox and Millennium to determine whether patients are abusing their prescriptions. (Doc. No. 92 ¶8). Both companies compete for a share of the market in Arizona, Florida, California, New Hampshire, Tennessee, and Texas. (Id. at ¶9). Ameritox alleges that Millennium distributed a series of false and misleading advertisements to healthcare providers and their patients in an attempt to enter an already crowded market. (Id. at 4–5, 9). These representations are described in detail below. Ameritox also asserts that Millennium engaged in a host of unfair business practices, including providing illegal inducements to garner business, performing medically unnecessary confirmatory testing, assisting healthcare providers in acquiring an improper ownership interest in purportedly independent businesses, and not collecting legally required co-payments and deductibles. (Id. at ¶200–07).

Ameritox filed suit on April 8, 2011 and submitted an Amended Complaint on June 14, 2011. (Doc. No. 1; Doc. No. 15). This Court dismissed the federal law claims of the Amended Complaint on January 6, 2012 without prejudice, and Ameritox filed its Second Amended Complaint on January 23, 2012. (Doc. No. 62; Doc. No. 66). On March 28, 2012, this Court granted Ameritox's motion to consolidate the initial litigation with a related case transferred to this Court from the Southern District of California. This Court ordered Ameritox to file "one final amended complaint, which includes all counts and allegations it intends to raise in this matter." (Doc. No. 89 at 4). The Court specifically cautioned Ameritox, "**The Court will not permit further amendments without good cause**." (Id.) (emphasis original). Ameritox submitted the current Third Amended Complaint on April 9, 2012. (Doc. No. 92).

In Count I, Ameritox asserts a claim of false advertising, accusing Millennium of

wrongfully claiming that the products and services it promoted were legal and proper for healthcare providers and their patients to use.  Count VI raises a claim of tortious interference, alleging that Millennium targeted Ameritox's existing customers with these false representations.   Count VII is a claim for unfair competition that contends that Millennium engaged in the actions set forth in its false representations and that these actions were improper. Millennium has not moved for dismissal of Counts II–V, all of which are related state law claims.

### B.      Millennium's Alleged Representations

The Court notes that Ameritox's Third Amended Complaint does not explicitly delineate the different advertisements it alleges are false.  However, in its Motion to Dismiss, Millennium has identified eight distinct representations, and it challenges each.

### 1.      Representation 1 – Billing Letter

Ameritox alleges that Millennium made a number of false or misleading claims related to its billing scheme in the form of printed advertisements, which Ameritox labels as "billing letters." (Id. at ¶¶68–70).  Millennium allegedly provided the billing letters to healthcare providers for distribution to their patients. (Id. at ¶68, Ex. F and Ex. G).  Ameritox alleges that Millennium informed potential customers that its corporate policy was to not collect from patients the difference between the amount Millennium billed for its services and the amount the patients' insurance companies agreed to pay. (Id. at ¶67, Ex. E).  Relatedly, Ameritox states that Millennium advertised that it would not require patients to pay deductibles or co-pays.  (Id. at ¶67, Ex. E).

Ameritox alleges that these advertisements were false, deceptive, and misleading to three classes of patients: those enrolled in Medicare who are not required to pay any co-pay or deductible; those enrolled in Florida Medicaid who are required to pay only a $1 co-payment;

3

and those enrolled in private insurance programs that include the services that Millennium provides within a patient's annual deductible. (Id. at ¶¶74–76). Therefore, Ameritox alleges that Millennium advertised an illusory benefit. (Id. at ¶74–76). Furthermore, because waiving these payments is apparently illegal, Ameritox also alleges that Millennium garnered business by falsely representing to potential customers that these actions were proper. (Id. at ¶¶77–78). Ameritox asserts that it was harmed by healthcare providers selecting Millennium over Ameritox based upon the illegal financial benefit to patients Millennium advertised. (Id. at ¶¶71–72).

### 2.   Representation 2 – Press Release

Ameritox alleges that Millennium distributed a misleading press release to thousands of healthcare providers across the nation. (Id. at ¶98). Ameritox claims that in this press release, Millennium's CEO advocates for Medicare to reimburse healthcare providers at a higher rate for drug screening and that he also represents Millennium has no vested interest in advocating for this change. (Id. at ¶98). Ameritox asserts that presenting the press release from a purportedly neutral standpoint is misleading, because Millennium's business model depends upon generating as much revenue as possible for healthcare providers, so long as they agree to contract with Millennium. (Id. at ¶98). Thus, Ameritox alleges that Millennium is falsely representing its motive as altruistic and that such a misrepresentation would induce healthcare providers to choose Millennium as their laboratory. (Id. at ¶99).

### 3.   Representation 3 – Billing Manual

Ameritox alleges that Millennium distributed a billing manual to a substantial number of healthcare providers using its services. (Id. at ¶ 93–95). The manual allegedly described Millennium's "unnecessary, duplicative, and improperly coded billing methods." (Id. at  ¶95). Ameritox alleges the billing manual deceptively represented that Millenenium's billing scheme was proper. Consequently, Ameritox contends, healthcare providers selected Millennium as

their testing laboratory, which caused Ameritox to lose potential or existing business.  (Id. at ¶95).

### 4.        Representation 4 – Gross Revenue Chart

Ameritox alleges that Millennium provided a substantial number of healthcare providers with a chart entitled "Gross Revenue by Insurance Category for Multi-Clin 11 Panel Test Kit," which Ameritox asserts promotes an improper billing practice.  (Id. at ¶¶35–37, Ex. A). Specifically, Ameritox alleges that, under Millennium's billing and coding method, doctors could bill Medicare multiple times for screening a single urine sample for multiple classes of drugs.  Ameritox claims this constitutes false advertising because the chart deceptively implied that Millennium's billing and coding method was proper and could be instituted in good faith. (Id. at ¶38).  Ameritox claims it was harmed by healthcare providers choosing Millennium based on this allegedly false advertising.  (Id. at ¶38).

### 5.        Representation 5 – Fractional Ownership

Ameritox alleges that Millennium misled prospective and existing customers regarding the propriety of a fractional ownership relationship.  (Id. at ¶61–62).  Millennium allegedly encouraged healthcare providers to purchase an ownership share in third-party laboratories that purportedly were independent of Millennium, but in fact are related to Millennium.  The healthcare providers would then receive a portion of the third-party laboratories' billings as a return on their investments.  (Id. at ¶60).  The third-party laboratories would forward the urine samples to Millennium for additional, duplicative testing.  Millennium allegedly promoted this illegal scheme through oral representations, in-person visits, emails, and the distribution of the paperwork necessary to establish a fractional ownership. (Id. at ¶61, Ex. D).  Ameritox contends that healthcare providers were enticed to choose Millennium as their laboratory by this financial opportunity.  (Id. at ¶62).

6.      **Representation 6 – Communications Encouraging Health Care Providers to Utilize Billing Modifiers**

Ameritox alleges that, "through e-mail and other media," Millennium "encouraged Health Care Providers to un-bundle global fees for urine drug screen testing by utilizing billing modifiers." (Id. at ¶34). Ameritox contends that these representations deceived healthcare providers into believing that Millennium's revenue-generating schemes were proper, and that the healthcare providers were materially influenced to choose Millennium for laboratory services in order to take advantage of that promised revenue increase. (Id. at ¶38).

7.      **Representation 7 – Communications Encouraging Health Care Providers to Reduce Individual Component POCT Tests and Instead to Send Samples to Millennium for Comprehensive Testing**

Similarly, Ameritox alleges that, "through e-mail and other media," Millennium "encouraged Health Care Providers to reduce the number of individual component POCT tests performed in the office, but to send the sample to Millennium for more expensive comprehensive testing that would be billed to third party payors." (Id. at ¶34). Ameritox contends that, enticed by the potential for increased revenue, healthcare providers were materially influenced to choose Millennium for laboratory services over Ameritox. (Id. at ¶38).

8.      **Representation 8 – Communications Regarding the Provision of Products and Services**

Ameritox alleges that Millennium, "via email and other media, as well as through oral representations made during phone calls and visits," misleadingly represented to healthcare providers that the provision of products and services to those providers at below-market value rates complied with federal and state law. (Id. at ¶63). Millennium allegedly provided healthcare providers with supplies necessary for onsite drug screening, compensated consultants that assisted healthcare providers in ascertaining required waivers, and provided chemical analyzers to healthcare providers at nominal rates. (Id.) Ameritox contends that healthcare

providers consequently chose Millennium with the mistaken belief that enjoying these benefits

complied with applicable law.  (Id. at ¶64).

### C.     Motion to Dismiss

Millennium moves to dismiss Count I for failure to state a claim, asserting that Ameritox

failed to allege sufficiently that Millennium's representations: (1) constitute commercial

advertisement governed by the Lanham Act; (2) were false or misleading; (3) deceived or were

likely to deceive consumers; or (4) had a material effect on consumers' purchasing decisions.

Additionally, Millennium contends that its representations are non-actionable statements of

opinion.  Millennium also moves the Court to dismiss Counts VI and VII for failure to state a

claim.

## II.    Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Fed. Deposit Ins. Corp., 208 F.3d 959, 962

(11th Cir. 2000) (citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal

Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he

bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing

that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is

and the grounds upon which it rests.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  Id. at 554.

While the Court must assume that all of the allegations in the complaint are true,

dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the

speculative level."  Id.  The standard on a 12(b)(6) motion is not whether the plaintiff will

ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the

plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital

Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## III.    Discussion

### A.    Count I — Lanham Act

Millennium argues the Court should dismiss Ameritox's claims against it for false

advertising under the Lanham Act, 15 U.S.C. § 1125(a).  The Lanham Act was enacted to

"protect persons engaged in . . . commerce against unfair competition."  Id. at § 1127.  Section

43(a) of the Lanham Act provides in relevant part that:

> Any person who . . . in commercial advertising or promotion,
> misrepresents the nature, characteristics, qualities, or geographic
> origin of his or her or another person's goods, services, or
> commercial activities, shall be liable in a civil action by any person
> who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(B).  Section 43(a) protects against a number of deceptive commercial

practices, including false advertising or promotion.  Seven-Up Co. v. Coca-Cola Co., 86 F.3d

1379, 1383 (5th Cir. 1996).  "To be actionable under the Lanham Act, the speech at issue must

be commercial in nature.  Commercial speech encompasses not merely direct invitations to trade,

but also communications designed to advance business interests."  VG Innovations, Inc. v.

Minsurg Corp., No.  8:10-cv-1726-T-33MAP, 2011 WL 1466181, at *5 (M.D. Fla. Apr. 18,

2011) (citations, internal quotation marks, and alterations omitted).

The Court must consider each representation individually, as opposed to grouping them

as an overall advertising campaign.  While a court should consider the context of a

representation, "it may not assume context."  Johnson & Johnson Vision Care, Inc. v. 1-800

Contacts, Inc., 299 F.3d 1242, 1248 (11th Cir. 2002) (emphasis original).  This is because such

an assumption would presume "that consumers will be exposed to every advertisement in a

8

campaign."  Id.  While Ameritox does allege that Millennium engaged in a "nationwide, centrally-coordinated" advertising campaign, Ameritox provides no information of how the different alleged false advertisements relate to one another.  (Doc. No 92 ¶14).  Therefore, this Court cannot presume that consumers received or interpreted every representation in concert.

### 1.    Whether Millennium's Representations Qualify as Commercial Activity

The Lanham Act regulates actions that constitute "commercial advertising or promotion." Therefore, before the Court determines whether Millennium's conduct violates the Lanham Act, it must first decide whether Millennium's representations were commercial in nature.  15 U.S.C.A. § 1125(a)(1); VG Innovations, Inc., 2011 WL 1466181, at *5.  For representations to constitute "commercial advertising or promotion," they must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

VG Innovations, Inc., 2011 WL 1466181, at *5 (citing Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)).  Of the four elements that comprise this inquiry, Millennium contends only that Ameritox fails to allege the dissemination prong sufficiently for each representation at issue.  It argues Ameritox has failed to identify the breadth of the dissemination and to whom such dissemination was made.  (Doc. No. 101 at 8–9). "The requisite level of circulation and the relevant purchasing public will vary according to the industry."  VG Innovations, Inc., 2011 WL 1466181, at *6.

Representation 1 consists of billing letters addressed to patients.  Millennium asserts that

Ameritox improperly alleges that the purchasing public to which the billing letters were disseminated is composed of healthcare providers and their patients. (Doc. No. 101 at 9). In its previous order granting partial dismissal, the Court noted that it was not clear whether Ameritox was alleging that healthcare providers, patients, or both groups constituted the relevant purchasing public. In its Third Amended Complaint, Ameritox has clarified its assertion that Millennium targeted both groups, alleging that Millennium first gave the billing letters to healthcare providers who, in turn, provided them to patients. (Doc. No. 92 ¶69). The Court concludes that with this clarification, Ameritox has sufficiently defined the purchasing public with respect to Representation 1.

Millennium also states that if the relevant purchasing public is so defined, then Ameritox fails to allege sufficient dissemination. Specifically, Millennium claims that if the purchasing public includes all patients who use healthcare, then the group consists of millions of members. (Doc. No. 101 at 10). However, the relevant purchasing public would not include all healthcare providers and all patients, but only doctors and patients who provide and seek urine drug testing. Ameritox alleges that the billing letter was disseminated to thousands of healthcare providers and, in turn, to thousands of their patients. (Doc. No. 92 ¶106). The Court concludes that this is sufficient to survive a motion to dismiss.

For Representations 2–8, Ameritox alleges dissemination to thousands of healthcare providers in the relevant states. (Doc. No. 92 ¶¶111–21). There is no ambiguity here as to the definition of the purchasing public; therefore, the Court must consider whether "thousands of healthcare providers" sufficiently alleges the requisite dissemination. Assuming Ameritox's factual allegations are true, as the Court must at this stage of the proceedings, the Court concludes that Ameritox has met its burden, especially considering the numerical and geographic

breadth of healthcare providers that Millennium allegedly targeted.

### 2. Lanham Act

A successful false advertising claim under the Lanham Act must establish:

> (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising.

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004).  For

Representation 1 (Billing Letter), Millennium argues that Ameritox has failed to satisfy the

second and third prong of the Lanham Act test — that the representations were deceptive or that

they had a material effect on consumers' purchasing decisions.  For all other representations,

Millennium contends Ameritox fails to establish any of the first three prongs of the Lanham Act

test — false or misleading, deceptive, and material.

### a. False or Misleading Advertising

This first prong — whether the challenged representations were false or misleading —

may be satisfied by demonstrating that the contents of the representations are literally false or are

misleading.  Intertape Polymer Corp. v. Inspired Techs., Inc., 725 F. Supp. 2d 1319, 1333 (M.D.

Fla. 2010).  A misleading advertisement "may literally be true (or is ambiguous) but implicitly

conveys a false impression, is misleading in context, or is likely to deceive consumers."  Id.

### i. Literal Falsity

Ameritox alleges that Millennium directly communicated a literal falsity to consumers

via Representation 2 (Press Release).  Ameritox asserts that Millennium's statement in its press

release that "Millennium as a corporation has no financial stake in this argument" is wholly

11

untrue.  (Doc. No. 92 ¶98).  If Millennium's press release advocated for an increase in Medicare reimbursements, and if Millennium's business model is premised on generating increased revenue for healthcare providers partly through Medicare reimbursements (both factual allegations the Court must accept as true at this time), then Ameritox makes an acceptable showing that the press release was literally false.

Similarly, with respect to Representations 3 (Billing Manual), 5 (Fractional Ownership), and 8 (Communications Regarding the Provision of Products and Services), Ameritox alleges that Millennium represented that the conduct advocated "was in compliance with federal and state laws" and was otherwise proper.  (See Doc. No. 92 at ¶¶ 62, 111, 112, 113, 114 and 116).  Ameritox alleges, however, that the conduct these representations advocated was illegal.  The Court concludes that these allegations are sufficient to survive Millennium's motion to dismiss.

### ii.    False by Necessary Implication

For the remaining Representations, Ameritox asserts that the messages Millennium purportedly conveyed are literally false by implication.  Ameritox claims that Representations 4 (Gross Revenue Chart), 6 (Communications Encouraging Health Care Providers to Utilize Billing Modifiers), and 7 (Communications Encouraging Health Care Providers to Reduce Individual Component POCT Tests and Instead to Send Samples to Millennium for Comprehensive Testing) are false advertising, because they falsely suggest that the practices they promote are legal and proper.  In other words, Ameritox's claims are premised on the belief that Millennium's representations concomitantly promote a practice and convey the message that such practice is legal for the targeted audience to use or implement.  Because Ameritox has not alleged that these representations explicitly address legality, Ameritox must allege that these representations are false by implication.

12

The "false by necessary implication" doctrine has not been expressly recognized by the Eleventh Circuit, but it has been recognized by other circuit courts,[1] and the concept has been applied by district courts within this circuit.[2]  As the Third Circuit explains, "A 'literally false' message may be . . . conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586–87 (3d Cir. 2002) (internal quotation marks omitted).  Ameritox alleges that Millennium's representations necessarily convey the message, "You can legally undertake this action."  That message is not directly set forth by a representation; therefore, the Court will construe Ameritox's argument thusly:  Millennium's representations contain a literal falsity by necessary implication.

First, the Court will consider the audience for which Millennium's representations were intended.  The relevant question is whether the targeted audience believed Millennium's representations conveyed the message that the actions the representations promoted were legal and proper.  For example, did healthcare providers believe that the gross revenue chart both advertised Millennium's billing scheme and expressed that the billing scheme was legal?  Ameritox alleges, yes, consumers chose Millennium with the mistaken belief that its representations promoted legal conduct.  Furthermore, Ameritox makes that factual allegation

---

[1] The Court is aware of adoption of this doctrine by five circuits. See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 148, 158 (2d Cir. 2007); Scotts Co. v. United Indus. Corp., 315 F.3d 264, 274–75 (4th Cir. 2002);  Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 34–35 (1st Cir. 2000); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 946–47 (3d Cir. 1993).

[2]  See, e.g., Precision IBC, Inc. v. PCM Capital, LLC, No. 10-682-CG-B, 2011 WL 5444114, at *11–12 (S.D. Ala. Oct. 17, 2011); Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc., 639 F. Supp. 2d 1356, 1366 (S.D. Fla. 2009).

explicitly and repeatedly.[3]

Assuming that healthcare providers believed the representations implicitly conveyed legality, Millennium asserts that Ameritox must demonstrate that the actions proposed by Millennium's representations are, in fact, illegal. (Doc. No. 101 at 15). Millennium relies on the logic that the statement, "These actions are legal," cannot be false if the actions are actually legal. Consequently, the argument goes, if the underlying actions are not illegal or otherwise improper, then Millennium's representations are not false advertising but legitimate promotion. Ameritox alleges that the testing and billing practices these Representations 4, 6 and 7 promote are illegal or improper. (Doc. No. 92 ¶¶61–64, ¶¶77–78). The Court concludes that these allegations are sufficient to survive a motion to dismiss.

### iii. Misleading

Finally, Ameritox contends that Representation 1 (Billing Letter) is misleading, because it promotes an illusory benefit. Representation 1 states that Millennium will not require patients to make co-payments or pay deductibles. Ameritox asserts that this is deceptive, because some patients were not required to make any payment for Millennium's services, despite Millennium's representations. (Doc. No. 92 ¶74–76). If Millennium did not charge patients co-payments or deductibles, then a representation that it will not seek payment from patients cannot be literally false. However, Ameritox's assertion is that Representation 1 "implicitly convey[ed] a false impression" by having consumers believe that they would enjoy some benefit under Millennium's billing scheme. Intertape Polymer Corp., 725 F. Supp. 2d at 1333. These statements sufficiently allege that Representation 1 is misleading; therefore, if Millennium had

---

[3] For example, see Doc. No. 92 ¶64 ("Health Care Providers, believing that they could legally take advantage of these unlawful inducements, chose Millennium's laboratory services over Ameritox's in order to receive these inducements.").

challenged Representation 1 concerning the first prong of the Lanham Act test, the Court would

conclude that Ameritox's allegations are sufficient to survive a motion to dismiss.

> **b.      Deception or Tendency to Deceive**

The deception prong may be satisfied if the representations either "actually deceived . . .

or had the tendency to deceive" the relevant purchasing public.  See Third Party Verification,

Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007).  Millennium argues that

Ameritox merely parrots the language of the Lanham Act test.  (Doc. No. 101 at 16).  Ameritox

alleges that Millennium's representations deceived or were likely to deceive consumers by

misrepresenting the legality and propriety of Millennium's billing scheme, Millennium's

provision of benefits to healthcare providers, and the proposed fractional ownership relationship.

 (Doc. No. 92 ¶¶38, 62, 64, 71–72, 95).  These factual allegations do more than merely

regurgitate the language of the deception element by specifying how consumers actually were or

were likely to be deceived.

Millennium also contends that Ameritox does not properly demonstrate consumer

deception.  (Doc. No. 101 at 16).  Here, labeling representations as either "false" or "misleading"

carries consequences.  Allegations of literally false representations do not require supporting

evidence of consumer deception, but allegations of misleading advertisements do.  Johnson &

Johnson Vision Care, 299 F.3d at 1247.  However, although a party must support allegations of

misleading advertisements with evidence of consumer deception at later stages of litigation, that

burden does not exist at the pleading stage.  See Alphamed Pharmaceuticals Corp. v. Arriva

Pharmaceuticals, Inc., 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005) ("At the pleading stage,

[plaintiff] is not required to submit [evidence of consumer deception].  It is sufficient for

[plaintiff] to allege that the statements are deceptive.").  Because Ameritox is not required to

present evidence of consumer deception to combat a motion to dismiss, Millennium's argument

fails at this time.

### c.     Materiality

In addition to establishing that Millennium's representations were misleading and

deceptive, Ameritox must demonstrate that these representations were "likely to influence the

purchasing decision." Johnson & Johnson, 299 F.3d at 1250.  This requirement may be satisfied

by showing "the defendants misrepresented an inherent quality or characteristic of the product"

and "is based on the premise that not all deceptions affect consumer decisions." Id.  Millennium

alleges that Ameritox merely parrots the language of the materiality element.  (Doc. No. 101 at

17).

Ameritox alleges that Representations 1, 3, 4, 6, and 7 were materially misleading in

misrepresenting to healthcare providers and patients that the testing and billing methods they

described were legal and proper.  Ameritox asserts that Representations 5 and 8 were similarly

material to the purchasing decision of healthcare providers by misrepresenting the legality of the

proposed fractional ownership relationship and the provision of allegedly illegal benefits,

respectively.  Ameritox alleges that healthcare providers chose to contract with Millennium as

their drug testing laboratory because of these misrepresentations.  (Doc. No. 92  ¶¶38, 62, 64,

71–72, 95).  These factual allegations are sufficient to survive a motion to dismiss.

Representation 2 is somewhat different in that it alleged that healthcare providers were

materially influenced to contract with Millennium by a press release that deceptively implied

that Millennium's advocacy to change Medicare's reimbursement policy was unrelated to its

financial interests.  (Doc. No. 92 ¶¶98–99).  However, here too, Ameritox sufficiently pleads the

materiality element in alleging that healthcare providers were at least in part persuaded to choose

16

or retain Millennium based on a deceptive implication that Millennium acted magnanimously.

Accepting these factual allegations as true, Representation 2 also meets the pleading requirement

for materiality.

### 3.    Non-Actionable Statements of Opinion

Millennium claims that even if Representations 1 and 3–8 conveyed false or misleading

information, those representations were non-actionable statements of opinion.  The Lanham Act

regulates only representations of fact — statements that are "capable of being proven false."

Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335, 1357 (S.D. Fla. 2002) (citation

omitted).  Millennium contends that any statement it may have made regarding the legality or

propriety of the actions and services described in its representations were statements of opinion.

Statements by laypersons that purport to interpret the meaning of a statute or regulation

are opinion statements, and not statements of fact, unless "a court or agency of competent

jurisdiction" has clearly and unambiguously ruled on the matter.  Id.  (citing Coastal Abstract

Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)).  Additionally, "the

proper inquiry is whether the law was unambiguous at the time [the] alleged misstatements were

made."  Dial A Car, Inc. v. Transp., Inc., 82 F.3d 484, 489 (D.C. Cir. 1996).

In response to Millennium's argument that its representations were unactionable

statements of opinion, Ameritox explained in its response to Millennium's motion to dismiss

why the practices in Representations 1 (Billing Letter) and 8 (Communications Regarding the

Provision of Products and Services) are illegal.  Specifically, Ameritox provided support for its

arguments that the waiver of co-payments and deductibles, and the provision of inducements to

healthcare providers at below-market value in exchange for referrals, violate established law and

that those practices were held to be unlawful before Millennium disseminated its challenged

representations.  (Doc. No. 118 at 12–16).

However, Ameritox did not assert — either in its complaint or in its response to Millennium's motion to dismiss — that the conduct promoted in Representations 3–7 was unambiguously illegal at the time the representations were disseminated.[4]  Consequently, for Representations 3–7, the Court directed Ameritox to file a supplemental brief that addressed "whether a court or agency of competent jurisdiction has clearly and unambiguously ruled that the specific billing practices that Millennium has promoted are illegal and that such law existed at the time that Millennium made the representations."  (Doc. No. 129).

Ameritox has complied with that directive, citing a combination of agency reports, statutes, regulations, and case law indicating that the conduct Millennium allegedly promoted in Representations 3–7 (unbundling, unnecessary and duplicative testing, and fractional ownership) had been clearly and unambiguously ruled illegal by a court or agency of competent jurisdiction at the time that Millennium made the representations.  The Court concludes that this is sufficient to state a Lanham Act claim and survive Millennium's motion to dismiss.

### B.    Count VI – Common Law Unfair Competition – Tortious Interference

Millennium moves the Court to dismiss Ameritox's tortious interference claims raised in Count VI for failure to identify a tort, impermissible shotgun pleading, and failure to state a claim.

---

[4]  The representations in (3) through (7) are: (3) in a billing manual, Millennium described unnecessary, duplicative, and improperly coded billing methods; (4) in a gross revenue chart, Millennium suggested that healthcare providers bill multiple times for screening a single urine sample for multiple classes of drugs; (5) Millennium advocated for fractional ownership of third-party laboratories; (6) Millennium encouraged healthcare providers to un-bundle global fees for urine drug screen testing by utilizing billing modifiers; and (7) Millennium encouraged health care providers to reduce the number of individual component POCT tests performed in the provider's office and to instead send their samples to Millennium for more expensive comprehensive testing.

### 1.    Failure to Identify a Tort

Millennium contends that it cannot determine which tort Ameritox alleges in Count VI. (Doc. No. 101 at 21).  Although Ameritox's labeling of Count VI as "Common Law Unfair Competition-Tortious Interference" lacks clarity, the Court is unpersuaded by Millennium's contention that it cannot determine whether Ameritox seeks relief under the tort of unfair competition or tortious interference.

First, Ameritox's allegation of suffering harm "as a result of Millennium's intentional and unjustified interference" would apprise a reasonable reader that Count VI advances a claim of tortious interference.  Second, Ameritox's factual allegations that Millennium was aware of Ameritox's existing business relationships with healthcare providers would be a curious and unnecessary addition to a claim of unfair competition.  Furthermore, although Millennium contends that it was unable to determine the tort asserted by Count VI, it did in fact argue that Count VI does not properly state a claim of tortious interference.[5]  While the Third Amended Complaint is not a model of clarity, it was at least clear enough to allow Millennium to deduce that it faces a claim of tortious interference.

### 2.    Shotgun Pleading

The Court also rejects Millennium's shotgun-pleading argument.  Millennium contends that dismissal is appropriate because it is unclear under which states' laws Ameritox advances claims of tortious interference.  (Doc. No 101 at 22).  Ameritox has alleged (1) that it enjoyed advantageous business relationships with health care providers in Arizona, Florida, California,

---

[5]  The Court recognizes that a defendant confronted with an unclear pleading may face a Catch-22: the defendant may either contend that the pleading is so unclear as to render it indiscernible or respond to the claim it believes the plaintiff makes. However, in this instance, Millennium could readily infer from Ameritox's pleading which claims were being raised.

New Hampshire, Tennessee, and Texas; (2) that Millennium knew of those ongoing business relationships; (3) that Millennium intentionally and unjustifiably interfered with those relationships; and (4) that as a result of Millennium's interference, Ameritox has suffered injuries to its relationships in Arizona, Florida, California, New Hampshire, Tennessee, and Texas.  (Doc. No. 92 at 44–46).  The Court agrees with Millennium that Ameritox's pleading lacks clarity.  However, with these factual allegations, it can be inferred that Ameritox has advanced claims for tortious interference under the state laws of Arizona, Florida, California, New Hampshire, Tennessee, and Texas.

### 3.        Failure to State a Claim

Next, the Court turns to Millennium's assertion that Ameritox failed to state a claim for tortious interference.  In Florida, the elements of tortious interference are:

> (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985) (per curiam).  The elements of tortious interference under the laws of Arizona, California, New Hampshire, Tennessee, and Texas are substantially similar to those in Florida.[6, 7]

Millennium contends that Ameritox failed properly to allege disruption to its existing

---

[6] Millennium cites California's elements, which parse the third prong of Floridia's elements into intentional acts by the defendant and actual disruption with the relationship. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008) (citation omitted); (Doc. No. 101 at 24–25). However, Millennium does not demonstrate that any substantive difference exists between these standards.

[7] See Antwerp Diamond Exch. of Am., Inc. v. Better Business Bureau, 637 P.2d 733, 739–40 (Ariz. 1981); Sybersound Records, 517 F.3d at 1151 ; Wilcox Indus. Corp. v. Hansen, __ F. Supp. 2d __, No. 11-cv-551-PB, 2012 WL 1600293, at *6 (D.N.H. May 7, 2012); Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002); ThermoTek, Inc. v. WMI Enters., LLC, No. 3:10-cv-2618-D, 2011 WL 1485421, at *8 (N.D. Tex. 2011).

relationships and damage it suffered as a result. (Doc. No. 101 at 25).  Ameritox alleges that its

relationships with healthcare providers would have continued had the healthcare providers not

been induced by Millennium's tortious interference to switch drug-testing laboratories. (Doc.

No. 92 ¶187).  The alleged tortious interference includes false and misleading advertisements,

improper kickbacks, the illegal provision of below market-value supplies, the illegal billing

scheme, and illegal fractional ownership relationships proposed by Millennium, all of which

have been thoroughly described above.  (Doc. No. 92 ¶¶188–94).  These allegations are

sufficient for purposes of a motion to dismiss to substantiate disruption to Ameritox's existing

relationships with healthcare providers and the damage it suffered by losing clients.

Consequently, Millennium's motion must be denied as to Count VI.

### C.    Count VII – Common Law Unfair Competition

In Count VII, Ameritox asserts an unfair competition claim under common law.

Millennium moves the Court to dismiss Count VII for failure to identify a legally cognizable

claim.  Specifically, Millennium points out that federal common law has not existed in seventy-

five years.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78  (1938) ("There is no federal . . .

common law.").

In Count VII, Ameritox clearly intended to advance claims for unfair competition under

the state laws of Arizona, Florida, California, New Hampshire, Tennessee, and Texas.  In

Arizona, Florida, New Hampshire, and Texas, "unfair competition" is an umbrella term for

causes of action arising out of conduct that is contrary to honest practice in industrial and

commercial matters and/or conduct which is likely to confuse or deceive the public.  See Third

Party Verification, 492 F. Supp. at 1324–25 (citation omitted); see also Doe v. Arizona Hosp. &

Healthcare Ass'n, CV07–1292–PHX–SRB, 2009 WL 1423378, at *11 (D.Ariz. Mar.19, 2009);

Optical Alignment Sys. and Inspection Servs., Inc. v. Alignment Servs. of N. Am., Inc., 909 F.

Supp. 58, 61 (D.N.H. 1995); Vendever LLC v. Intermatic Mfg. LTD, No. 3:11-cv-201-B, 2011

WL 4346324, at *6 (N.D. Tex. Sept. 16, 2011).

　　　　Under the common law of California and Tennessee, however, the tort of unfair

competition is limited to those instances in which a party passes off its goods or services as those

of another.  See Groupion, LLC v. Groupon, Inc., __ F. Supp. 2d __, No. C 11-870 JSW, 2012

WL 1655728, at *12 (N.D. Cal. May 8, 2012); Brainard v. Vassar, 561 F. Supp. 2d 922, 937

(M.D. Tenn. 2008) (quoting Sovereign Order of Saint John of Jerusalem, Inc. v. Grady, 119 F.3d

1236, 1243 (6th Cir. 1997)).

　　　　The factual allegations in the Third Amended Complaint are sufficient to state a plausible

claim that Millennium's conduct was contrary to honest practice in industrial and commercial

matters and that its conduct was likely to confuse or deceive the public.  Therefore, Ameritox has

stated a plausible claim for unfair competition under the common law  of Florida, Arizona, New

Hampshire, and Texas.  However, because Ameritox has not alleged that Millennium has

engaged in any conduct that could be characterized as "passing off," Ameritox's claims for

common law unfair competition under the common law of California and Tennessee fail.

Accordingly, Millennium's motion is granted with respect to Count VII as it relates to claims

under California and Tennessee law.  Otherwise, Millennium's motion is denied as to Count VII.

**IV.     Conclusion**

　　　　Accordingly, it is ORDERED AND ADJUDGED that Millennium's Motion to Dismiss

(Doc. No. 101) is **GRANTED in part** and **DENIED in part**.  The motion is:

　　　　(1)     **GRANTED** with respect to Count VII as it relates to claims for common law

　　　　　　　　unfair competition under California and Tennessee law;

(2)      Otherwise, **DENIED**.

Furthermore:

(3)      Millennium's Motion for Leave to File a Reply (Doc. No. 131) is **DENIED**.

(4)      The discovery stay is hereby lifted.

(5)      Ameritox's Motion to Modify or Lift the Stay (Doc. No. 120) is **DENIED as moot**.

(6)      The Clerk is directed to remove Exhibits A and B to Ameritox's  Motion to Modify or Lift the Stay (Doc. No. 120) from the docket sheet and file those exhibits under seal.

(7)      Millennium's Motion to File Under Seal (Doc. No. 123) is **DENIED as moot**.

**DONE AND ORDERED** this 23rd day of August, 2012.


SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record