UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERITOX, LTD.,

       Plaintiff,

v.                                                                              Case No.: 8:11-cv-775-T-24-TBM

MILLENNIUM LABORATORIES, INC.,

       Defendant.

_____/

## **ORDER**

This cause comes before the Court on Plaintiff's Motion to Partially Dismiss

Counterclaims.  (Doc. No. 137).  Defendant opposes the motion.  (Doc. No. 156).  As explained

below, the motion is granted in part and denied in part.

## **I.  Background**

Plaintiff Ameritox is a clinical laboratory that engages in screening urine specimens for

the presence of drugs.  Defendant Millennium is one of Plaintiff's competitors in the industry.

Healthcare providers contract with companies like Plaintiff and Defendant to determine whether

patients are abusing their prescriptions.  Both companies compete for a share of the market in

Arizona, Florida, California, New Hampshire, Tennessee, Texas, Washington, New York, and

Oregon.

In its third amended complaint, Plaintiff asserts the following claims: (1) Lanham Act -

false advertising, (2) violation of Florida's Deceptive and Unfair Trade Practices Act (Counts II

and III), (3) unfair competition under California law, (4) unfair competition under New

Hampshire law, (5) common law tortious interference with business relationships in Arizona,

Florida, California, New Hampshire, Tennessee, and Texas, and (6) common law unfair

competition in Arizona, Florida, New Hampshire, and Texas.[1]  (Doc. No. 92).  In response,

Defendant filed a counterclaim, in which it asserts the following claims: (1) violation of

Florida's Deceptive and Unfair Trade Practices Act, (2) violation of California's Unfair

Competition Law, (3) violation of California's Unfair Practices Act, (4) violation of New York's

Consumer Protection from Deceptive Acts and Practices Law, (5) common law unfair

competition in Florida, Texas, and Washington, and (6) common law tortious interference with

business relationships in Florida, California, New York, Tennessee, Texas, Washington, and

Oregon.[2]  (Doc. No. 133).

## II.  Standard of Review

 In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

---

[1]The Court dismissed Plaintiff's common law unfair competition claim to the extent that it was based on unfair competition in California and Tennessee.  (Doc. No. 132).

[2]Defendant has withdrawn its counterclaim for violation of Texas' Deceptive Trade Practices Act - Consumer Protection Act, which is contained in Count IV.  (Doc. No. 157). Accordingly, to the extent that Plaintiff moves to dismiss this claim, the motion is denied as moot.

 Plaintiff also moves to strike Defendant's request for attorneys' fees under Florida Statute § 817.41.  Defendant has also moved to withdraw its erroneous reference to § 817.41 (Doc. No. 157), and as such, Plaintiff's motion to strike the fee requested under § 817.41 is denied as moot.

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

at 1965 (citation omitted).  While the Court must assume that all of the allegations in the

complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion

is not whether the plaintiff will ultimately prevail in his or her theories, but whether the

allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the

allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir.

1986).

## III.  Motion to Dismiss

Plaintiff moves to dismiss Counts II, III, and V of Defendant's counterclaim, as well as to

clarify the claims asserted in Counts VI and VII.  Accordingly, the Court will review each count.

### A.  Count II: Violation of California's Unfair Competition Law

In Count II, Defendant asserts a claim for violation of California's Unfair Competition

Law ("UCL").  The title of Count II states that Defendant is seeking injunctive relief and

damages.  Plaintiff argues that Count II should be dismissed to the extent that Defendant is

seeking damages.  Defendant responds that it is not seeking compensatory damages for this

claim and concedes that such damages are not available under California's UCL.  Instead,

Defendant clarifies that it is only seeking restitutionary damages (and Plaintiff acknowledges in

its motion to dismiss that restitution is an available remedy under California's UCL).

Accordingly, the Court denies as moot Plaintiff's motion to dismiss Count II and clarifies that

the Court construes the relief sought under this claim to be limited to injunctive relief and restitution.

Plaintiff also seeks dismissal of Defendant's claim for attorneys' fees in connection with Count II. After asserting all of its claims for relief, Defendant's counterclaim contains a section titled, "Prayer for Relief" that specifies the relief sought on all of its claims. One of the types of relief sought is attorneys' fees pursuant to California Civil Code § 1780 and California Code of Civil Procedure § 1021.5. Plaintiff argues that Defendant's request for attorneys' fees in connection with Count II must be stricken, as attorneys' fees are not available under California's UCL.

Defendant responds that it is not seeking attorneys' fees under California's UCL, but instead, it is seeking attorneys' fees under California Code of Civil Procedure § 1021.5 in connection with its claim in Count II. Courts have recognized that under certain circumstances, attorneys' fees under California Code of Civil Procedure § 1021.5 may be awarded in connection with a claim for violating California's UCL. See, e.g., Jackson v. Sturkie, 255 F. Supp.2d 1096, 1107-08 (N.D. Cal. 2003); Burrows v. Orchid Island TRS, LLC, 2008 WL 744735, at *4 (S.D. Cal. 2008). Accordingly, the Court denies Plaintiff's motion to dismiss Defendant's claim for attorneys' fees in connection with Count II.

**B.  Count III: Violation of California's Unfair Practices Act**

In Count III, Defendant asserts a claim for violation of Sections 17043, 17044, and 17045 of California's Unfair Practices Act ("UPA"). Section 17043 provides that "[i]t is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring

competitors or destroying competition." Cal. Bus. & Prof. Code § 17043 (2012).  Section 17044

provides that "[i]t is unlawful for any person engaged in business within this State to sell or use

any article or product as a 'loss leader' as defined in Section 17030 of this chapter."[3] Cal. Bus. &

Prof. Code § 17044 (2012).  Defendant alleges that Plaintiff violated Sections 17043 and 17044

of the UPA in the following ways: (1) providing physicians with point-of-care testing cups

("POCT cups") for free or below their market value; (2) providing gift cards and meals to

healthcare professionals; (3) sponsoring and paying for physicians' office parties; (4) providing

free computers to physicians' offices; and (5) encouraging referrals by arranging for the sale of

non-Ameritox products to Plaintiff's customers at favorable prices.

   Section 17045 of the UPA provides that "[t]he secret payment or allowance of rebates,

refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or

secretly extending to certain purchasers special services or privileges not extended to all

purchasers purchasing upon like terms and conditions, to the injury of a competitor and where

such payment or allowance tends to destroy competition, is unlawful."  Defendant alleges that

Plaintiff violated Section 17045 of the UPA in the following ways: (1) providing specimen

processors free of charge to those physicians that were deemed big accounts and who agreed to

---

[3]Section 17030 provides the following definition of a loss leader:

"Loss Leader" means any article or product sold at less than cost:
(a) Where the purpose is to induce, promote or encourage the purchase of other merchandise; or
(b) Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or
(c) Where the effect is to divert trade from or otherwise injure competitors.

Cal. Bus. & Prof. Code § 17030 (2012).

provide a minimum number of urine samples to be tested; (2) overcompensating those physicians provided with specimen processors for the sham lease of space used by the specimen processors; and (3) providing gift cards and meals to health care professionals.

Plaintiff argues that Count III should be dismissed for two reasons. First, Plaintiff argues that the UPA was not intended to remedy the types of harm alleged by Defendant. Second, Plaintiff argues that Defendant has not met the heightened pleading standard required to state a claim under the UPA.  Accordingly, the Court will address both arguments.

## 1. Types of Harms Remedied by the UPA

Section 17001 of the UPA provides that the purpose of the UPA "is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented."  Cal. Bus. & Prof. Code § 17001 (2012).  Furthermore, the UPA is to be liberally construed.   Cal. Bus. & Prof. Code § 17002 (2012).

Plaintiff first argues that the UPA was not intended to remedy the types of harm alleged by Defendant.  Plaintiff relies on Co-opportunities, Inc. v. National Broadcasting Co., Inc., 510 F. Supp. 43, 49 (N.D. Cal. 1981), to argue that the UPA does not apply because Defendant's UPA claim does not focus on actual services that Plaintiff and Defendant provide as competitors (i.e., urine testing services).

In Co-opportunities, the plaintiff was a co-op advertising service that provided information to radio and television staff regarding available co-op advertising programs. See id.

6

at 45. The defendant was a national network that provided a co-op advertising service for free to its radio affiliates in order to increase its share of the affiliate market. Id.  The court stated that Section 17043's prohibition on "'giving away' a product refers to the giving away of a product that one normally sells." Id. at 50. The defendant was not in the business of selling co-op advertising services, and therefore, the court held that Section 17043 did not apply because "the product being given away [was] in the nature of a gift of an unrelated product rather than an integral part of the network affiliate agreement." Id.

Defendant responds that the UPA does apply.  Defendant relies on Paramount General Hospital Co. v. National Medical Enterprises, Inc., 42 Cal. App. 3d 496 (Cal. App. 2d Dist. 1974), to argue that even if the goods and services being given away or sold below cost are considered to be ancillary to Plaintiff's urine testing services, they are offered as part of a package and are so substantial that cutting their cost can be used as a means to harm competition in violation of the UPA.

The parties in Paramount General Hospital were competitors that "compete[d] in offering to the medical profession specially designed working quarters, as well as a variety of sophisticated, specialized services." See id. at 501. The plaintiffs alleged that the defendants were either selling below cost or giving away medical office space and specialized services in order to destroy competition. Id. at 498. The services in question were ancillary to a lease provided by the defendants, and it was unclear whether the UPA was applicable to leases. Id. at 503. However, without deciding whether the UPA applied to leases, the court stated that "it cannot matter which element of a package is functionally 'ancillary' to the other: what is vital is whether the part of the package clearly covered by the Act is so substantial that cost-cutting with

7

respect to it can be used as a means to injure or destroy competition." Id. at 503. The court held

that the services, although ancillary to the leased medical office space, were substantial enough

to be subject to the UPA. Id.

In the instant case, Defendant and Plaintiff are competing providers of urine testing

services. Defendant asserts that Plaintiff's provision of services and goods, such as POCT cups

and specimen processors, is an illegal attempt to injure Defendant by increasing Plaintiff's share

of the market. The Court finds that Defendant sufficiently alleges that Plaintiff's provision of

POCT cups and specimen processors is sufficiently substantial and related to the urine testing

services that both normally provide as competitors, and therefore, such conduct falls within the

scope of the UPA.

## 2. Stating a Claim under the Unfair Practices Act

Next, Plaintiff argues that Defendant has not met the pleading standard required to state a

claim under the UPA: to "state with reasonable particularity the facts supporting the statutory

elements of the violation." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (Cal.

App. 2d Dist. 1993).  Specifically, Plaintiff argues that Defendant has failed to sufficiently allege

facts to support the following necessary elements: (1) Plaintiff had a specific intent to injure its

competitor, as required for a claim under Section 17043 or 17044; (2) Plaintiff sold goods or

services below cost, or gave away goods or services, as required to state a claim under Section

17043; (3) Plaintiff sold goods or services below cost, as required to state a claim under Section

17044; (4) Defendant has standing to pursue its claim under Section 17045; and (5) Plaintiff

provided secret special services to only certain customers, as required to state a claim under

Section 17045.  As explained below, the Court concludes that Defendant has failed to state a

8

claim for a violation of Sections 17043, 17044, or 17045.

### a.  Specific Intent to Injure Competition

Plaintiff argues that Defendant has not pled facts to allege that Plaintiff acted "with the *purpose* of injuring competitors or destroying competition." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 179 (Cal. 1999) (emphasis in original). In Cel-Tech, the court noted that the severe sanctions available under Sections 17043 and 17044 "might explain why the Legislature applied these sanctions to below-cost sales and loss leaders only when done with the *purpose* of injuring competitors or destroying competition." Id.  Defendant responds that it has sufficiently alleged Plaintiff's intent to harm competition by describing Plaintiff's allegedly fraudulent and illegal practices and stating that they were undertaken as part of a scheme to increase revenues at Defendant's expense.  The Court finds that by alleging that Plaintiff provides things, such as POCT cups and specimen processors, for free or below market value for the purpose of injuring Defendant and thereby increasing Plaintiff's market share, Defendant has sufficiently alleged that Plaintiff acted "with the *purpose* of injuring competitors or destroying competition." Id.

### b.  Selling Goods or Services Below Cost, or Giving Them Away

Sections 17043 makes it illegal to sell a product at less than cost, or to give the product away, for the purpose of injuring competitors or destroying competition.  Likewise, Section 17044 makes it illegal to sell a product at a loss.  Defendant alleges that Plaintiff violated Sections 17043 and 17044 of the UPA in the following ways: (1) providing physicians with POCT cups for free or below their market value; (2) providing gift cards and meals to healthcare professionals; (3) sponsoring and paying for physicians' office parties; (4) providing free

computers to physicians' offices; and (5) encouraging referrals by arranging for the sale of non-Ameritox products to Plaintiff's customers at favorable prices.

Plaintiff contends that Defendant has not stated a claim under Sections 17043 and 17044 for two reasons: (1) Defendant failed to make specific factual allegations regarding the costs of the items at issue; and (2) there are no allegations that Plaintiff normally sells the products that it is alleged to have given away or that Plaintiff sold the products at all.  Therefore, Plaintiff concludes that Defendant has not alleged that Plaintiff gave away or sold any products within the meaning of Sections 17043 and 17044.  The Court will address each argument.

### i.  Allegations Regarding Costs

Plaintiff argues that Defendant has not stated a claim under Sections 17043 and 17044 due to its failure to make specific factual allegations regarding the costs of the items at issue. Defendant responds that Section 17043's "below cost" requirement only applies to the sale of goods and does not apply to Defendant's allegations that the Plaintiff has given away goods.  As such, Defendant asserts that it has adequately stated a claim under Section 17043 by alleging that Plaintiff gave away things for free, such as POCT cups and specimen processors.  However, a review of Defendant's claim reveals that it does not list the provision of specimen processors as one of the ways that Plaintiff violated Sections 17043 or 17044.[4]  (Doc. No. 133, ¶ 89).  To the extent that Defendant alleges that Plaintiff gave away POCT cups for free, it asserts in its response to Plaintiff's motion to dismiss that it has alleged that Plaintiff bundled its urine testing

---

[4]Instead, Defendant alleges in Count III that Plaintiff's provision of specimen processors violated Section 17045.  (Doc. No. 133, ¶ 90).

services with the provision of free goods.[5]

In support of its position that the provision of POCT cups for free violates Section 17043 and 17044, Defendant relies on Thrush v. Hillman Group, Inc., 116 Fed. Appx. 794 (9th Cir. 2004). Defendant's reliance on Thrush, however, is misplaced.

In Thrush, the defendant sold fasteners and gave away racks. See id. at 795-96. In determining whether the defendant's conduct of giving away the racks violated Section 17043, the court cited Paramount General Hospital and stated that the proper inquiry was "whether the combined sale price for the racks and fasteners is less than the cost to [the defendant] of the racks and fasteners taken together." Id. at 796. Because the plaintiff did not provide evidence that the defendant sold the racks and fasteners, together, for less than their combined costs, the court affirmed the grant of summary judgment in favor of the defendant. See id.

Likewise, in the instant case, Defendant has not alleged the cost to Plaintiff of providing the urine testing services and the POCT cups. Nor has Defendant alleged the sales price for this package. Because both Sections 17043 and 17044 impose liability when the product is being sold for less than its cost, the aggrieved party must allege the sales price, the cost of the product,

_____

[5]The Court notes that Defendant also argues that it has asserted violations of Sections 17043 and 17044 by alleging that Plaintiff sold goods below cost. Specifically, Defendant points to its allegations that Plaintiff provided space-lease agreements in combination with laboratory testing services as a package, and as such, it has adequately alleged sales below cost. Again, a review of Defendant's claim reveals that it does not list the provision of space-lease agreements as one of the ways that Plaintiff violated Sections 17043 or 17044. (Doc. No. 133, ¶ 89). Instead, Defendant alleges in Count III that Plaintiff's provision of space-leases violated Section 17045. (Doc. No. 133, ¶ 90). Thus, the Court will analyze Defendant's argument that it has asserted a violation of Sections 17043 and 17044 only with respect to the provision of POCT cups.

and the cost of doing business.  See G.H.I.I. v. MTS, Inc., 147 Cal. App.3d 256, 275 (Cal. App.

1st. 1983); Visionshape, Inc. v. Kofax Image Products, Inc., 106 Cal. Rptr.2d 20, 26 (Cal. App.

4th 2001).  Because Defendant has failed to sufficiently allege the sales price, the cost of the

package, and/or the cost of doing business, Defendant's claim that the provision of free POCT

cups violated Sections 17043 and 17044 fails.[6]

### ii.  Selling the Products at Issue

Additionally, Plaintiff argues that Defendant has not stated a claim under Sections 17043

and 17044 to the extent that the claim is based on the provision of gift cards, meals, office

parties, computers, or non-Ameritox products, because  there are no allegations that Plaintiff

*normally* sells these things or that such things were *sold at all* by Plaintiff.  The Court agrees

with Plaintiff: to the extent that Count III is based on violations of Sections 17043 and 17044

due to Plaintiff's alleged provision of gift cards, meals, office parties, and computers, as well as

facilitating the sales of non-Ameritox products at favorable prices, the claim must be dismissed.

The provision of such free gifts is outside the scope of Section 17043, which applies when the

accused provides, for free or below cost, a product that the accused normally sells.  See Co-

Opportunities, 510 F. Supp. at 50.  Plaintiff is not alleged to normally sell gift cards, meals,

office parties, computers, or non-Ameritox products.  Likewise, the provision of such free gifts is

outside the scope of Section 17044, which requires that the conduct at issue involve a *sale* at

below cost.

---

[6]Likewise, to the extent that Defendant contends that Plaintiff violated Sections 17043
and 17044 by providing POCT cups at a price below market value (as opposed to free), the claim
still fails, because Defendant has not provided any allegations regarding the sales price for the
POCT cups, the cost of the POCT cups, and/or the cost of doing business.

**c. Defendant's Standing to Assert a Claim under Section 17045**

Section 17045 of the UPA prohibits "[t]he secret payment or allowance of rebates, refunds, commissions, or unearned discounts whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition."  Plaintiff argues that Defendant lacks standing to assert a claim under Section 17045, because only a purchaser may bring a Section 17045 claim, and Defendant has not alleged that it is a purchaser of Plaintiff's goods.

Defendant responds, relying on ABC International Traders, Inc. v. Matsushita Electric Corporation of America, 14 Cal. 4th 1247 (Cal. 1997), that a Section 17045 claim may be brought by a competitor of the party offering the secret discounts or secret special services in question.  The Court agrees with Defendant.

In ABC International, the defendant argued that "the class of 'competitors' and the 'competition' protected under section 17045 is restricted to competitors of the person allowing an unearned discount—sometimes called the 'primary' line of commerce—as opposed to competitors of the person receiving it—the 'secondary' line." Id. at 1254.  The court rejected this argument, stating that it "interpret[ed] the statute to protect against competitive injury in the secondary, as well as primary, lines of commerce." Id. at 1257.  Accordingly, based on ABC International, this Court agrees with Defendant that a competitor of the person giving the secret discount or secret special service has standing to assert a claim based on Section 17045.  See id.; see also Paramount General Hospital, 42 Cal. App.3d at 504.

### d.  Secret Special Services or Privileges

Plaintiff argues that Defendant fails to state a claim under Section 17045, because Defendant has not alleged that Plaintiff provided "secret" rebates or "secret" special services or privileges.  Defendant responds that it has pled secret special services or privileges by alleging that Plaintiff only offered certain services and privileges to certain types of providers, such as large accounts or providers with a high volume of Medicare patients.[7]

In order to state a claim for a violation of the special services or privileges portion of Section 17045, Defendant must allege that Plaintiff has *secretly* extended to certain purchasers special services or privileges *not extended to all purchasers purchasing upon like terms and conditions*, to the injury of a competitor and where such payment or allowance tends to destroy competition.  While a liberal reading of Defendant's claim may support its argument that it has alleged that Plaintiff has extended to certain purchasers (such as large accounts or providers with a high volume of Medicare patients) special services or privileges not extended to all purchasers, Defendant has not explicitly alleged that the special services or privileges were *secretly extended.*  Furthermore, Defendant has not clearly alleged that the special services or privileges were not extended to all large accounts or all providers with a high volume of Medicare patients. As such, the Court agrees with Plaintiff that Defendant has failed to state a claim for a violation of Section 17045.

---

[7]Defendant also alleges that Plaintiff violated Section 17045 by providing gift cards and meals to providers and their staff.  However, Defendant does not address this allegation in its response to the motion to dismiss.  Furthermore, Defendant has not sufficiently alleged that the provision of the gift cards and meals were a secret or that they were not provided to all purchasers.  As such, to the extent that Defendant contends that Plaintiff violated Section 17045 by providing gift cards and meals to providers and their staff, the Court concludes that Defendant has not adequately stated this claim.

**C.  Count V: Violation of New York's Consumer Protection from Deceptive Acts and Practices Law**

In Count V, Defendant asserts a claim for violation of New York's Consumer Protection from Deceptive Acts and Practices Law.  Section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  In order to state a claim for a violation of § 349, one must allege three things: (1) that the challenged conduct was consumer-oriented; (2) that the challenged conduct was misleading in a material way; and (3) that the person or entity suffered damages as a result of the deceptive act.  See Vitolo v. Mentor H/S, Inc., 426 F. Supp.2d 28, 33 (E.D.N.Y. 2006)(citation omitted).

Defendant alleges that Plaintiff has engaged in numerous deceptive acts and unfair practices by engaging in a pattern and practice of offering and providing kickbacks and other improper financial inducements to physician-consumers in exchange for the referral of business. Defendant contends that Plaintiff's deceptive acts and unlawful practices include providing physicians' offices with specimen processors, at no cost as long as the physicians submitted a minimum number of urine samples to Plaintiff.  Further Defendant contends that Plaintiff knows these arrangements are illegal kickback schemes, yet Plaintiff made false and misleading representations to physicians that placing specimen processors in physicians' offices is legal.

Additionally, Defendant contends that Plaintiff engages in other deceptive acts and unlawful practices designed to steal business from Defendant or otherwise unfairly bolster its competitive position, including: (1) providing physicians with POCT cups for free or below their

market value; (2) misleading healthcare providers into ordering tests based on insurance status and not medical necessity, thus promoting medically unnecessary testing; (3) providing gift cards and meals to health care professionals and their staffs; (4) sponsoring and paying for physicians' office parties; (5) providing free computers to physicians' offices; and (6) arranging for the sale of non-Ameritox products to accounts at favorable prices in order to encourage more referrals.

Finally Defendant alleges that Plaintiff's deceptive acts, unfair practices, and false and misleading statements already have influenced, and will continue to influence, customer purchasing decisions as physicians choose Plaintiff's services instead of those offered by Defendant.  Therefore, Defendant alleges that it has been harmed by the wrongful and intentional actions of Plaintiff.

Plaintiff moves to dismiss this counterclaim, arguing that: (1) § 349 of New York's Consumer Protection from Deceptive Acts and Practices Law only prohibits deceptive practices, not merely unfair practices; (2) § 349 was not intended to remedy disputes between competitors; and (3) Defendant fails to adequately allege causation and injury with the requisite specificity. Accordingly, the Court will address each argument.

## 1.  Deception

Section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  Thus, in order to state a claim, one must allege a deceptive act, which is an act that is likely to mislead.  See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26

16

(N.Y. App. Ct. 1995).

Plaintiff moves to dismiss Defendant's counterclaim to the extent that it is based on conduct that is merely unfair, as opposed to deceptive.  Specifically, Plaintiff points to the following allegations as describing unfair, as opposed to deceptive, conduct: (1) providing physicians with POCT cups for free or below their market value; (2) misleading healthcare providers into ordering tests based on insurance status and not medical necessity, thus promoting medically unnecessary testing; (3) providing gift cards and meals to health care professionals and their staffs; (4) sponsoring and paying for physicians' office parties; (5) providing free computers to physicians' offices; and (6) arranging for the sale of non-Ameritox products to accounts at favorable prices in order to encourage more referrals.[8]

The Court agrees with Plaintiff's argument, except as to the allegation that Plaintiff misled healthcare providers into ordering tests based on insurance status instead of medical necessity, thus promoting medically unnecessary testing.  The allegation that Plaintiff misled healthcare providers into ordering medically unnecessary tests describes deceptive conduct. Accordingly, the Court grants Plaintiff's motion to dismiss this counterclaim to the extent that it is based on the following conduct: (1) providing physicians with POCT cups for free or below their market value; (2) providing gift cards and meals to health care professionals and their staffs; (3) sponsoring and paying for physicians' office parties; (4) providing free computers to physicians' offices; and (5) arranging for the sale of non-Ameritox products to accounts at favorable prices in order to encourage more referrals.

---

[8]Plaintiff concedes that Defendant's allegation that Plaintiff misleads customers regarding the legality of Plaintiff providing the free specimen processors describes deceptive conduct.  (Doc. No. 137, p.14).

17

## 2.  Disputes between Competitors

In order to state a claim for a violation of § 349, one must allege that the challenged

conduct was consumer-oriented.  See Vitolo, 426 F. Supp.2d at 30.  Plaintiff argues that this

counterclaim must be dismissed because § 349 was not intended to remedy disputes between

competitors.

Plaintiff construes § 349 too narrowly.  Courts look at the following when determining

whether the conduct at issue was consumer-oriented:

> It is clear that the gravamen of the complaint must be consumer
> injury or harm to the public interest.  The critical question, then, is
> whether the matter affects the public interest in New York, not
> whether the suit is brought by a consumer or a competitor.

Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)(internal quotation

marks and citation omitted).

As the counterclaim now remains, it is based on the following conduct: (1)  providing

kickbacks in the form of specimen processors, at no cost to physician-consumers, as long as the

physicians submitted a minimum number of urine samples to Plaintiff; and (2) misleading

healthcare providers into ordering tests based on insurance status instead of medical necessity,

thus promoting medically unnecessary testing.  Thus, to the extent that this counterclaim is based

on these two types of conduct, the Court concludes that the conduct affects the public interest

and should not be dismissed.

## 3.  Causation and Injury

Next, Plaintiff argues that this counterclaim fails because Defendant has not adequately

alleged causation and injury with the requisite specificity.  The Court notes, however, that an action under § 349 is not subject to a heightened pleading standard.  See Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).  Furthermore, upon review of the allegations in the complaint, the Court concludes that Defendant has adequately alleged causation and injury. Accordingly, the Court denies Plaintiff's motion on this issue.

### D.  Count VI and VII: Common Law Unfair Competition and Tortious Interference

In Counts VI and VII, Defendant asserts a claim for common law unfair competition in Florida, Texas, and Washington, as well as a claim for common law tortious interference with business relationships in Florida, California, New York, Tennessee, Texas, Washington, and Oregon.  Plaintiff asks the Court to clarify that these claims are limited to the states specifically identified in the counterclaim.  Defendant concedes that such treatment is appropriate, given that that is how the Court construed Plaintiff's similar claims in its third amended complaint. Therefore, the Court clarifies that Defendant's counterclaims for common law unfair competition and common law tortious interference with business relationships are limited to the states specifically identified in the counterclaims.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion to Partially Dismiss Counterclaims (Doc. No. 137) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1)   Plaintiff's motion, as it relates to Count II, is denied.

(2)   Plaintiff's motion, as it relates to Count III, is granted.

19

(3)     Plaintiff's motion, as it relates to Count V, is granted to the extent that it is based

on the following conduct: (1) providing physicians with POCT cups for free or

below their market value; (2) providing gift cards and meals to health care

professionals and their staffs; (3) sponsoring and paying for physicians' office

parties; (4) providing free computers to physicians' offices; and (5) arranging for

the sale of non-Ameritox products to accounts at favorable prices in order to

encourage more referrals.  Otherwise, Plaintiff's motion, as it relates to Counts V,

is denied.

(4)     Plaintiff's motion, as it relates to Count IV and to strike Defendant's request for

attorneys' fees under Florida Statute § 817.41, is denied as moot.

(5)     The Court clarifies that Defendant's counterclaim for common law unfair

competition and common law tortious interference with business relationships

(Counts VI and VII) are limited to the states specifically identified in the

counterclaim.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of January, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to: All parties and Counsel of Record