UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| AMERITOX, LTD., a Texas limited partnership,<br><br>        Plaintiff,<br><br>v.<br><br>MILLENNIUM LABORATORIES, INC., a California corporation,<br><br>        Defendant. | Case No.: 8:11-cv-775-T-24-TBM |

## AMERITOX, LTD.'S OPPOSITION TO MILLENNIUM LABORATORIES, INC.'S MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS

Ameritox, Ltd. ("Ameritox") hereby respectfully files its Opposition to Millennium Laboratories, Inc.'s ("Millennium") Motion for Leave to File Amended Counterclaims (D.E. 190 or "Motion" or "Mtn."), and further states as follows:

### INTRODUCTION

Millennium seeks leave to expand this case through its proposed Second Amended Counterclaims ("Proposed Counterclaims") by reviving a previously dismissed counterclaim for false advertising under the Lanham Act and adding 10 new counterclaims for violations of unfair competition and deceptive trade practices statutes in various states. Millennium also seeks to replead and expand its existing counterclaims in light of the Court's January 10, 2013 Order, and to address purportedly "new evidence." Because the deadline to amend the pleadings has passed, Federal Rule of Civil Procedure 16(b) governs Millennium's Motion, and in order to add new counterclaims or allegations at this stage of the proceedings, Millennium must demonstrate "good cause."

Millennium fails to demonstrate that "good cause" exists to amend or revise its counterclaims.  Millennium's Proposed Counterclaims are based on evidence Millennium had, or should have discovered months, if not years ago.  Millennium thus had ample time and opportunity to promptly amend its counterclaims, but failed to exercise proper diligence, which, in this Circuit, ends the good cause inquiry.

As such, and for the reasons explained below, Ameritox respectfully requests that the Court deny Millennium's Motion for Leave to File Amended Counterclaims.

<u>**FACTUAL BACKGROUND**</u>

On April 8, 2011, Ameritox sued Millennium, alleging violations of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, and common law unfair competition. (D.E. 1.)  On June 14, 2011, Ameritox amended its complaint. (D.E. 15.)  On July 1, 2011, Millennium sought partial dismissal of Ameritox's amended complaint. (D.E. 20.)

On July 7, 2011, the parties filed a joint case management report and, on July 15, 2011, the Court entered a Case Management and Scheduling Order ("Initial Scheduling Order," D.E. 23.)  The Initial Scheduling Order provided that the "[p]arties shall have until ***September 16, 2011***, to file Third Party Claims, Motions to Join Parties, and Motions to Amend Pleadings." (*Id*. at ¶4 (emphasis in original).)  It further explained that "[m]otions to amend any pleading ... are distinctly disfavored after entry of the Case Management and Scheduling Order." (*Id*. at ¶8.)

On September 19, 2011, Millennium filed its answer and counterclaims ("Original Counterclaims"), alleging violations of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, violations of

Florida's Misleading Advertising Law, § 817.41, common law tortious interference with business relationships in Florida, and common law unfair competition in Florida. (D.E. 32.)

On January 6, 2012, the Court dismissed Counts I and IV of Ameritox's amended complaint without prejudice. (D.E. 62.)   Ameritox filed its second amended complaint on January 23, 2012. (D.E. 66.)   Millennium moved to strike portions of that second amended complaint and to dismiss Counts I and IV. (D.E. 76.)   On March 28, 2012, before ruling on Millennium's motion, the Court consolidated this case with a second litigation in the Southern District of California, *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 11-866 (S.D. Cal.) (D.E. 89.)   In that Order, the Court directed Ameritox to "file one final amended complaint, which includes all counts and allegations it intends to raise in this matter." *Id*. at 4.

On April 9, 2012, Ameritox filed its third amended complaint, alleging that Millennium uses a wide range of illegal inducements, kickbacks, and other financial incentives to gain referrals from health care providers. (D.E. 92.)   Millennium's tactics include illegal kickbacks of testing supplies and instruments, fee sharing arrangements, and fraudulent, unnecessary and duplicative testing and billing practices, all of which are intended to illegally induce business relationships with Millennium in exchange for its promise to "maximize profits" for its physician customers.

Based on these illegal billing practices, Ameritox asserts violations of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, violations of Florida's Deceptive and Unfair Trade Practices Act § 501.201 *et seq.*, violations of California's Unfair Competition Law, § 17200, violations of the New Hampshire's Consumer Protection Act, § 358-A, *et seq.*, and common law tortious interference with business relationships in Arizona, Florida, California, New Hampshire,

Tennessee, and Texas, and common law unfair completion in Arizona, Florida, New Hampshire, and Texas.[1] (*Id.*)

On May 3, 2012, Millennium sought partial dismissal of Ameritox's third amended complaint and, at Millennium's request, the Court stayed discovery until it ruled on Millennium's motion. (D.E. 101, D.E. 103, D.E. 110.)

On August 23, 2012, the Court granted-in-part and denied-in-part Millennium's motion to dismiss.  The Court dismissed Ameritox's claim for common law unfair competition in California and Tennessee; otherwise, Ameritox's claims remained intact. (D.E. 132.)

On August 29, 2012, Millennium filed its answer and first amended counterclaims ("First Amended Counterclaims"). (D.E. 133.)  Millennium *dropped* its counterclaims for violations of the Lanham Act and violations of Florida's Misleading Advertising Law.  *Id.*  Millennium reasserted and expanded its counterclaims for violations of Florida's Deceptive and Unfair Trade Practices Act § 501.201 *et seq.*, and common law tortious interference and unfair competition in Florida.   Millennium added new counterclaims for violations of California's Unfair Competition Law, § 17200, *et seq.*, violations of California's Unfair Practices Act, § 17000, *et seq.*, violations of Texas's Deceptive Trade Practices-Consumer Protection Act, §17.41, *et seq.*, violation of New York's Consumer Protection from Deceptive Acts and Practices Law, § 349, common law unfair competition in Texas and Washington, and common law tortious interference with business relationships in California, New York, Tennessee, Texas, Washington, and Oregon.[2] (*Id.*)

---

[1]     These are Ameritox's pending claims based on the Court's October 23, 2012 Order.

[2]     Millennium voluntarily dismissed its claim for violation of the Texas's Deceptive Trade Practices-Consumer Protection Act on October 15, 2012. (D.E. 157.)

On September 17, 2012, Ameritox sought partial dismissal of Millennium's First Amended Counterclaims. (D.E. 137.)   On November 5, 2012, before the Court had ruled on Ameritox's motion, the parties filed a joint motion to extend certain discovery deadlines in the Initial Scheduling Order. (D.E. 165.)   The parties explained to the Court that, among other things, "several deadlines from the Case Management and Scheduling Order lapsed as a result of the stay of discovery previously granted by the Court . . . since the filing of the original complaint in this case, the nature and scope of the claims have expanded." *Id*. at 1. Millennium did not request (or discuss at any time) the need to extend the deadline to amend the pleadings.

On November 7, 2011, the Court entered an Amended Case Management and Scheduling Order ("Amended Scheduling Order"). (D.E. 168.)   The Amended Scheduling Order repeated the September 16, 2011 deadline and stated that "[m]otions to amend any pleading ... are distinctly disfavored after entry of the Case Management and Scheduling Order."   *Id*. at ¶8.

On January 6, 2013, the Court granted-in-part and denied-in-part Ameritox's motion to dismiss Millennium's First Amended Counterclaims.   (D.E. 178.)   On February 14, 2013, Millennium's counsel first informed Ameritox that Millennium intended to move for leave to file amended counterclaims.   On February 21, 2013, Millennium filed its Motion and Proposed Counterclaims.

Specifically, Millennium seeks, untimely and without good cause, to include the following amendments:

> **Count I:** A renewed Lanham Act claim based on previously made allegations regarding Ameritox's statements about 1) a *Qui Tam* suit  and Dear Doctor Letter, 2) specimen processors and space lease arrangements, 3) health care providers ordering tests based on a patient's insurance status, 4) in-network insurance providers; and  5) "new" allegations based on Ameritox's statements about  an on-going criminal investigation into Millennium's business practices;

**Count II:** Additional Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et. seq.*, based on previously made allegations regarding representations made to health care providers about in-network insurance providers;

**Count III:** Additional violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 1700, *et. seq.*, based on previously made allegations regarding representations made to health care providers about in-network insurance providers;

**Count IV:** Additional violations of New York's Consumer Protection from Deceptive Act and Practices Law, N.Y. Gen. Bus. Law § 349 based on previously made allegations regarding representations made to health care providers about in-network insurance providers;

**Counts V – XIV:** Adding counterclaims for violations of unfair competition laws and deceptive trade practices acts in the states of Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New Mexico, Nevada, North Carolina, South Carolina, and Washington, based on previously made allegations;

**Count XV:** Additional allegations of unfair conduct in violation of Common Law Unfair Competition based on the previously made allegations regarding representations to health care providers about in-network insurance providers and improperly including the states of Connecticut and Delaware;

**Count XVI:** Additional allegations in violation of Common Law Tortious Interference in the states of Connecticut, Delaware, Maine Massachusetts, New Hampshire, New Mexico, Nevada, North Carolina, and South Carolina.

(*See generally* Proposed Counterclaims, ¶¶ 87–216.)

## LAW AND ARGUMENT

I.   **MILLENNIUM'S MOTION FOR LEAVE MISTAKENLY RELIES ON RULE 15(a) AS THE OPERATIVE LEGAL STANDARD BUT RULE 16(b) GOVERNS A MOTION TO AMEND AFTER THE EXPIRATION OF THE DEADLINE SET BY THE CASE MANAGEMENT ORDER**

Millennium argues throughout its Motion that leave to amend "shall be freely given" under Federal Rule of Civil Procedure 15(a), and that "Millennium's proposed amendments fall well within the liberal standard for freely allowing amendment of pleadings." (Mtn. at 14–15.) That, however, is not the proper starting point. The Court in its Initial and Amended Scheduling Orders set a September 16, 2011 deadline to amend the pleadings and provided that "[m]otions to amend any pleading ... are distinctly disfavored after entry" of those Orders. (D.E. 23, D.E. 168.) Where a motion to amend is filed after the deadline set by the court's scheduling order, the

moving party must first show "good cause" under Federal Rule of Civil Procedure 16(b) before the court will consider whether the amendment is proper under Rule 15(a).[3]  *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998).  As the Eleventh Circuit explained in *Sosa*: "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.*

The touchstone of the good cause requirement under Rule 16(b) is diligence.  *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1374 (M.D. Fla. 2009) ("The key to establishing good cause for an untimely amendment under the Eleventh Circuit's case law is to demonstrate diligence."); *see also Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521 (D. Del. 2010) ("[T]he good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party").  The Eleventh Circuit has identified three factors to consider when evaluating the diligence of a party seeking to amend a pleading: "(1) [whether] the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) [whether] the information supporting the proposed amendment was available to the plaintiff; and (3) even after acquiring information, [whether] the plaintiff delayed in asking for amendment." *PPS Data, LLC v. Allscripts Healthcare Solutions, Inc.*, 3:11-CV-273-J-37TEM, 2012 WL 243346, *2 (M.D. Fla. Jan. 25, 2012) (citing *Sosa,* 133 F.3d at 1417)).  If the party seeking amendment was not diligent, the good cause inquiry ends. (*Lord v. Fairway Elec., Corp.*, 223 F.Supp.2d 1270, 1277 (M.D. Fla. 2002).

---

[3]    Millennium makes passing reference to Rule 16 at the very end of its Motion.  (Mtn. at 20–21.)

Millennium must demonstrate that the evidence supporting its Motion is "newly discovered," and that, even after acquiring this information, Millennium moved promptly to amend the pleadings.  As discussed in more detail below, Millennium fails on both fronts.

## II.     MILLENNIUM FAILS TO SHOW GOOD CAUSE TO ADD A LANHAM ACT COUNTERCLAIM IN COUNT I

Millennium seeks to add a counterclaim for false advertising under the Lanham Act (Count I).  Millennium already stated a Lanham Act counterclaim in its Original Counterclaims filed on September 19, 2011. (D.E. 32 at ¶1.)  Millennium filed its First Amended Counterclaims on August 29, 2012, *dropping* its Lanham Act counterclaim from this case. (D.E. 133); *see Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.")  Millennium cannot resurrect its previously dropped Lanham Act counterclaim because it fails to demonstrate "good cause" necessary to meet the standard set by Rule 16(b) and the Eleventh Circuit.   Millennium's proposed Lanham Act counterclaim challenges five categories of allegedly false and misleading statements.  The first four categories are based on previously made allegations, while the fifth category is based on purportedly "new" evidence:

> **Category #1:  Statements Regarding the _Qui Tam_ suit :**  In December 2009, an individual whistleblower filed a civil complaint in the District of Massachusetts, alleging that Millennium caused health care providers to perform and order medically unnecessary testing and submit false claims to Medicare ("the _Qui Tam_ suit ").  Millennium contends that an April 2011 "Dear Doctor" letter ("Dear Doctor Letter") form Ameritox's then-CEO included false and misleading statements about the _Qui Tam_ suit  and Millennium.

> **Category #2:   Statements Regarding Specimen Collectors and Space Lease Arrangements:**  Millennium contends that Ameritox made false and misleading statements to health care providers about the legality of specimen collectors and space lease arrangements.

> **Category #3:   Statements Regarding Treatment Decisions Based on Insurance Coverage:**  Millennium contends that Ameritox made false and misleading statements to

health care providers that it is appropriate to make treatment decisions based on patients' insurance coverage.

**Category #4:  Statements Regarding In-Network Status:**  Millennium contends that Ameritox made false and misleading statements to health care providers that it is "in-network" with a number of insurance providers.

**Category #5:  Statements Regarding the USAO Criminal Investigation:** The United States Attorney's Office in Boston, Massachusetts recently launched a criminal investigating ("USAO Criminal Investigation") into Millennium's business practices. The USAO Criminal Investigation is well-publicized, including a November 16, 2012 Reuters articles titled, "Exclusive: U.S. drug testing firm probed for alleged fraud, intimidation." ("Reuters Article"). (*See* Exhibit A attached hereto.)  Millennium contends that Ameritox made false and misleading statements about the Reuters Article and the USAO Criminal Investigation.

With one exception—statements regarding the USAO Criminal Investigation—this information was known to Millennium at the time it filed its Original Counterclaims (September 19, 2011) or First Amended Counterclaims (August 29, 2012) such that Millennium could have sought the additional relief requested. (D.E. 32, D.E. 133.)  And, with respect to statements regarding the USAO criminal investigation, Millennium could have sought leave to amend no later than October 19, 2012.

> **A.      Millennium Abandoned Its Allegations Regarding the Dear Doctor Letter and *Qui Tam* suit  (Category #1) and, Furthermore, Millennium's Claim Is Untimely**

Millennium suggests though its Motion that it recently uncovered new information to support a Lanham Act false advertising claim regarding the *Qui Tam* suit , *i.e.*, the Dear Doctor Letter. (Mtn. at 9.)  Millennium fails to inform the Court that it expressly challenged the Dear Doctor Letter in its Original Counterclaims filed on September 19, 2011:

> 38.      Ameritox . . . also engages in other anti-competitive and dishonest conduct. For example, in the Spring of 2011, Ameritox distributed a "Dear Doctor" letter from its CEO Ancelmo Lopes, which cataloged the allegations of a baseless *qui tam* lawsuit filed against Millennium. *See* Exhibit 2. The letter was intended to deceive physicians and falsely impugn Millennium's reputation in the market. In part,

the letter claims that "the United States Department of Justice is currently investigating Millennium Laboratories . . . with respect to Millennium's revenue model for physicians using POCT cups, as well as Millennium's approach to confirmatory testing and related issues." It also describes a complaint filed by an "individual whistleblower" in December 2009. Ameritox's "Dear Doctor" letter is deceptive and unfair to Millennium in that the Department of Justice had previously notified the Court that it would not intervene in the *qui tam* lawsuit and because the whistleblower allegations were generated by a competitor to Millennium, all of which Ameritox failed to disclose. Most critically, Ameritox failed to disclose that months earlier, the same individual whistleblower had filed a virtually identical *qui tam* lawsuit against Ameritox which made many of the same allegations.

39. <u>Ameritox's "Dear Doctor" letter improperly was intended to damage and did damage the reputation of Millennium among customers and potential customers in the marketplace</u> . . .

(D.E. 32, (emphasis added).)  Millennium's own pleadings thus reveal that the Dear Doctor Letter was well known to Millennium years ago—before its Original Counterclaims were filed. And, Millennium's Original Counterclaims included counts for false advertising under the Lanham Act and Florida law. (D.E. 32, Counts I and IV.)  If Millennium actually believed that the Dear Doctor Letter qualified as "false advertising," it should have pleaded a false advertisings claim at that time.

Millennium also fails to inform the Court that Millennium dropped every allegation with respect to the *Qui Tam* suit  and Dear Doctor Letter in its August 29, 2012 First Amended Counterclaims, and *withdrew* the Dear Doctor Letter as an exhibit.  Moreover, Millennium's counsel addressed the Dear Doctor Letter at the October 19, 2012 hearing on Millennium's Motion to Seal.  Millennium's counsel explained to the Court that Millennium knew Ameritox issued the Dear Doctor Letter and provided copies to customers and potential customers:

> COUNSEL:  We know, as I mentioned, that Ameritox has issued these press releases in the past or statements that they've given to customers and others, potential customers that, for example, there was a so-called whistle blower suit filed in 2011 which was ultimately dismissed. It was baseless.

> But Ameritox issued a press release that indicated that there was a whistle blower suit involving Millennium's business practices. They prospectively gave that to customers, we have reason to believe, and potential customers, and indicated that there was an investigation when, in fact, there was no investigation and, in fact, the whistle blower suit was ultimately dismissed.

(Exhibit B at 21.)[4] If Millennium wanted to restate a claim regarding the *Qui Tam* suit and Dear Doctor Letter (which Millennium had no right to do in light of dropping its allegations in its First Amended Counterclaims), Millennium's counsel could have asked the Court for permission to amend the pleadings at the October 19, 2012 hearing, but failed to do so.

Moreover, after the October 19, 2012 hearing, at the Court's direction, the parties jointly filed a motion to amend the Initial Scheduling Order and extend certain discovery deadlines. The Court entered the Amended Scheduling Order on November 7, 2012. (D.E. 167.) The fact is that Millennium never raised (with Ameritox or the Court) the pleading deadline or its intention to amend the pleadings, even though the information and claims that Millennium wants to add were already in its possession.

Millennium provides no explanation why Millennium abandoned its claim relating to the *Qui Tam* suit and the Dear Doctor Letter in the first place, why Millennium's counsel failed to seek leave to amend when counsel appeared before the Court last October, or why Millennium failed to raise the pleading deadline and/or its Proposed Counterclaims in the parties' joint submission to amend the scheduling order. (D.E. 165.) In fact, Millennium fails to submit any evidence to establish "good cause" required by Rule 16(b) to add these new allegations and claims. As a result, Millennium's current push to amend the pleadings is untimely, and Millennium's Motion to add a claim relating to the *Qui Tam* suit and Dear Doctor Letter should be denied.

---

[4]     Ameritox attaches the October 19, 2012 Hearing Transcript as Exhibit B. The transcript is redacted pursuant to the Court's Order. (D.E. 163, D.E. 169.)

**B.     Millennium's Claim Regarding Specimen Collectors and
        Space Lease Arrangements (Category #2) Is Untimely**

Millennium concedes in its Motion that this claim is far from new. (*See*, Mtn. at 5 (discussing Millennium's claims).)   Millennium first alleged that Ameritox made false and misleading statements about the placement of specimen processors in its Original Counterclaims, and asserted a false advertising claim under Florida law on that ground.   (D.E. 32 at ¶78.) Millennium repeated those allegations in its First Amended Counterclaims, and made additional claims that Ameritox misleads heath care providers about space lease arrangements. (*See e.g.* D.E. 133 at ¶¶32–59.)  Yet, for reasons not explained, Millennium voluntarily dropped its false advertising claims (both under the Lanham Act and Florida law) from the pleadings.

Millennium now seeks to use these same allegations to resurrect a Lanham Act false advertising claim.   Millennium argues that it only recently learned "through statements and information provided by additional former Ameritox employees, that Ameritox widely disseminates" this information.   (Mtn. at 10.)   As an initial matter, Millennium provides no evidence through affidavit or otherwise, that explains why it could not have learned about Ameritox's alleged statements being "widely disseminated" prior to the expiration of the pleading deadline.   *See Data, LLC v. Allscripts Healthcare Solutions, Inc.*, 3:11-CV-273-J-37TEM, 2012 WL 243346, *2 (M.D. Fla. Jan. 25, 2012) (denying motion for leave to file second amended complaint after finding that "[t]here is no showing or argument that these materials were not available prior to expiration of the scheduling deadline.").   Furthermore, Millennium's First Amended Counterclaims previously stated that Ameritox had "misrepresent[ed] the legality of Ameritox's provision of specimen collectors and/or processors in physicians' offices in those states where specimen processors are illegal," including Florida, Texas, and Washington. (D.E. 133 at ¶109.)   That level of alleged dissemination was more than enough for Millennium to have

pleaded a Lanham Act claim in its First Amended Counterclaims if Millennium truly believed a viable claim existed.

Millennium's own pleadings reveal that its claim regarding specimen processors and space lease arrangements was well known to Millennium before filing its Original Counterclaims and First Amended Counterclaims. Because this information was readily available to Millennium, but Millennium failed to timely move to amend, the Court should deny Millennium's Motion as to these allegations.

C.     **Millennium's Claim Regarding Ameritox Misleading Health Care Providers into Ordering Tests Based on Insurance Status (Category #3) Is Untimely**

Again, Millennium relies on recycled allegations to argue that leave to amend the pleadings is warranted. Millennium's allegations that Ameritox mislead health care providers into ordering tests based on insurance status, not medical necessity, are not newly discovered as Millennium made the very same allegations in its First Amended Counterclaims. (D.E. 133 at ¶¶ 1, 4, 19.) Likewise, Millennium contends that it only recently learned that Ameritox's statements were "widely disseminated," and points to the Declaration of Tony Hamblen as support. (Mtn. at 9–10.) But, Millennium's First Amended Counterclaims states that Ameritox promotes billing and collecting payment for medically unnecessary testing in Florida, California, New York, and Washington, which is a sufficiently wide level of dissemination for Millennium to have pleaded a Lanham Act false advertising claim if Millennium believed a claim existed.[5] (D.E. 133 at ¶¶ 74, 82, 104, 109.) And, with respect to the Declaration of Tony Hamblen, it makes no new assertions, but merely reiterates the allegations made in declarations already filed

---

[5]     In fact, Millennium contends that Ameritox's entire, nationwide "business model" is based on misleading health care providers into ordering tests based on insurance status, not medical necessity. (D.E. 133 at ¶19.)

with the Court to support the First Amended Counterclaims.  (*See* D.E. 190–11, Decl. of T. Hamblen.)  In addition, this declaration was signed on October 19, 2012, four months prior to Millennium's filing of its Motion. (*Id*. at 6.)  Millennium provides no excuse for this delay.[6]  *See Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002) (holding that a delay in asking for amendment after acquiring information is factor in determining good cause to amend).

Millennium unduly delayed in seeking to add a Lanham Act false advertising claim by repackaging information long known and available to Millennium as "newly discovered." Millennium fails to meet the burden established by Rule 16(b) to demonstrate good cause and Millennium's Motion as to these allegations should be denied.

### D.    Millennium's Claim Regarding In-Network Status (Category #4) Is Untimely

As Millennium acknowledges, its allegations concerning Ameritox's representations about in-network status with insurance providers are also not newly discovered.  (Mtn. at 5.) Millennium does claim, however, that it only recently obtained a supposed list of "Ameritox Contracted Payors," which identifies certain insurance providers as in-network when they allegedly are not.  (*Id*. at 5–6.)  Though it does not make an explicit argument, Millennium implies that this new information allows Millennium to use its previously made allegations to add a Lanham Act false advertising claim (and to amend Counts II, III, IV, and XV).[7] Millennium is mistaken.

---

[6]    Millennium claims in its Motion that "[u]pon learning of these new facts, Millennium promptly began preparing its Second Amended Counterclaims and accompanying motion papers." (Mtn. at 16.)  If so, Millennium fails to explain why its Motion and Proposed Counterclaims took more than four months to write.

[7]    For the same reasons, Millennium's Motion to add these allegations to Counts II, III, IV, and XV should be denied.

Millennium once again fails to demonstrate (via affidavit or otherwise), or even argue, why this list is newly discovered evidence.  Furthermore, the discovery of this list does nothing to alter the substance of the allegations Millennium previously made in its First Amended Counterclaims.  Millennium has already alleged that Ameritox made representations to doctors about its in-network status with certain insurers that are supposedly untrue. (D.E. 133 at ¶¶ 63–64.)  In fact, Millennium relies solely on the July 27, 2012 Declaration of Cecilia Gibson to support the allegations it makes in the proposed counterclaims. (D.E. 190 at ¶¶ 78–79.)  This is the very same declaration that Millennium relied upon in its previously filed First Amended Counterclaims. (D.E. 133 at ¶¶ 63–64.)

Millennium was aware of the information supporting the proposed amendment concerning in-network insurers, but unduly delayed in amending its pleadings.  Millennium fails to provide evidence demonstrating when it obtained the "Ameritox Contracted Payors" list or why it could not have obtained this list earlier despite its own diligence.  As such, Millennium's Motion as to these allegations should be denied.

**E.     Millennium's Claim Regarding the USAO Criminal Investigation (Category # 5) Is Untimely**

As to the fifth and final category, Millennium contends through its Motion that it "recently acquired documented proof of Ameritox's false and misleading statements to health care providers" about the USAO Criminal Investigation. (Mtn. at 8.)  But, whether Millennium had "documented proof," Millennium's counsel addressed Ameritox's alleged statements regarding the USAO Criminal Investigation at the October 19, 2012 hearing on Millennium's Motion to Seal:

> COUNSEL:  We are aware that Ameritox has provided information to Millennium Laboratories' customers and suggested to them that they would not want to do business with Millennium Laboratories because they might end up in the cross hairs

of a criminal investigation.  We are aware that Ameritox is trying to use this to gain competitive advantage that whether or not the investigation was –

THE COURT:  Use what, this lawsuit?

COUNSEL:  Use the fact of an investigation in the District of Massachusetts to gain competitive advantage with Millennium's customers and others, and use it both offensively and defensively in this and other litigation by perhaps suggesting to individuals and parties who may be witnesses -- pardon me -- that they may somehow be involved or somehow may have exposure in this criminal investigation in Massachusetts.

(Exhibit B at 17–18.)  Millennium fails to explain in its Motion why the information available to Millennium on October 19, 2012 was insufficient to move promptly to amend the pleadings, or why Millennium's counsel did not ask the Court for permission to amend the pleadings at that time.

As to Millennium's "recently acquired documented proof," Millennium states generally that in November 2012 an Ameritox representative provided a Millennium customer in Iowa a copy of the Reuters Article along with a document ("Challenged Document") that made a series of false and misleading statements about the USAO Criminal Investigation. (Mtn. at 8–9.) Otherwise, Millennium makes no attempt to directly argue diligence.  No information exists in the record to establish when Millennium first learned of the Challenged Document or how Millennium diligently searched for information and prepared its Motion.  By way of example, if Millennium first learned of the Challenged Document on November 15, 2012, it took Millennium 14 weeks to prepare and file its Motion and Proposed Counterclaims.  A 14 week delay is not appropriate here, especially in light of the statements that Millennium's counsel made to the Court at the October 19, 2012 hearing.  Millennium thus fails to offer enough evidence to demonstrate good cause to a add claim regarding the USAO Criminal Investigation.

In sum, Millennium's proposed Lanham Act counterclaim is based entirely on evidence Millennium had, or should have discovered months, if not years ago.   Millennium fails to demonstrate "good cause" under Rule 16(b), and Millennium's Motion should be denied.[8]

**III.  MILLENNIUM FAILS TO DEMONSTRATE GOOD CAUSE FOR THE ADDITION OF ITS CLAIMS REGARDING VIOLATIONS OF UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES STATUTES IN CONNECTICUT, DELAWARE, MAINE, MASSACHUSETTS, NEW HAMPSHIRE, NEW MEXICO, NEVADA, NORTH CAROLINA, SOUTH CAROLINA, AND WASHINGTON IN COUNTS V TO XV**

In arguing that it should be allowed to add 10 new counterclaims for violations of state unfair competition and deceptive trade practices statutes, Millennium does not attempt to demonstrate why it could not have earlier learned that the alleged conduct occurred in these additional states.   Instead, Millennium contends that it has "obtained information from other Ameritox employees," and that "as a result, Millennium has learned that Ameritox's practices are not limited to only the states identified."   (Mtn. at 10.)   Millennium submits four "new" declarations to its Proposed Counterclaims as support.

The first declaration, and the only one that Millennium relies upon in its Motion, is the Declaration of Tony Hamblen, which, as discussed in Section II.B.3, makes no new assertions, reiterates allegations made in the declarations originally filed with Millennium's First Amended Counterclaims, and is dated October 2012, four months before Millennium filed its Motion.[9] (*See* D.E. 190–11.)   The second declaration—from Pamela Hyman—repeats existing allegations, and is dated August 30, 2012, which is one day after Millennium filed its First Amended Counterclaims and more than six months before Millennium brought its Motion.   (*See* D.E. 190– 13.)   The third and fourth declarations address purported conduct in the states of Michigan and

---

[8]  For the same reasons stated in Section II, Millennium's Motion to expand its existing counterclaims based on "newly discovered evidence" should be denied.

[9]  The Declaration of Joseph Lollo is cited as a "see also," while the Declarations of Heather Boehmer and Pamela Hyman are not even cited in Millennium's Motion. (Mtn. at 10.)

Ohio.  (*See* D.E. 190–12 and D.E. 190–14.)   But Millennium does not, and has not, pleaded counterclaims involving those states.

These declarations do not support a showing of good cause sufficient to meet the burden imposed by Rule 16(b).   In addition, Millennium's First Amended Counterclaims state that each of the alleged acts of conduct that form the basis for the state statutory claims it seeks to add were engaged in by Ameritox "nationwide."  (D.E. 133, ¶109.)   In fact, in its First Amended Counterclaims, Millennium made allegations regarding conduct engaged in by Ameritox in six new states not included in its Original Counterclaims—California, Texas, Tennessee, New York, Washington, and Oregon.   For Millennium to represent that it is only now learning of the supposed extent of Ameritox's alleged conduct is curious in light of Millennium's own pleadings.

Millennium again has provided no evidence to support its claim that this information could not have been discovered, through proper diligence, prior to the expiration of the scheduling deadline, or at least before filing its First Amended Counterclaims. *See* F.R.C.P. 16(b); *see also Allscripts Healthcare Solutions, Inc.*, 2012 WL 243346 at *2.)   Because Millennium fails to meet the burden required to demonstrate good cause under Rule 16(b) for an amendment to include the addition of these state law claims, Millennium's Motion as to these amendments should be denied.

## IV.   EVEN IF MILLENNIUM'S MOTION WAS JUDGED UNDER RULE 15(A), IT SHOULD BE DENIED

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Justice does not require granting leave to amend where the amendment follows undue delay. *Campbell v. Emory Clinic,* 166 F.3d 1157, 1162 (11th Cir.1999).  For reasons described above, that is exactly the situation here.

## V.      MILLENNIUM HAD AMPLE OPPORTUNITY AND TIME TO AMEND ITS COUNTERCLAIMS

Finally, Millennium argues that leave to amend should be granted as a matter of fairness, because "[u]nlike Ameritox, Millennium has not been afforded repeated opportunities to amend its counterclaims." (Mtn. at 13.)   The fact of the matter is that Millennium has had ample opportunity to timely amend its counterclaims, and did so.   Millennium filed its Original Counterclaims on September 19, 2011, and filed its First Amended Counterclaims on August 29, 2012. (D.E. 32, D.E. 133.)  Millennium thus has been treated fairly in this case.

Ameritox further acknowledges that the Court's January 10, 2013 Order did not address whether Millennium could amend in light of the Court's ruling.  (D.E. 178.)  But, Millennium never sought clarification from the Court.   And, Ameritox filed its Answer and Affirmative Defenses to the First Amended Counterclaims on January 22, 2013 (D.E. 181).   Millennium again had 21 days to amend its counterclaims, but chose not to do so, and fails to explain why it delayed.

### CONCLUSION

Accordingly, Ameritox respectfully requests that the Court deny Millennium's Motion in its entirety.

### REQUEST FOR HEARING

Respectfully, Ameritox does not believe it is necessary to take up the Court's time with a hearing on this issue and believes that Millennium's Motion can be decided on the papers. However, Ameritox will be prepared for a hearing at the Court's request.

### LOCAL RULE 3.01(g) GOOD FAITH CERTIFICATE

Pursuant to Local Rule 3.01(g), Ameritox attempted to confer with counsel for Millennium in good faith.  On February 14, 2013 Counsel for Millennium sent an email to

counsel for Ameritox informing Ameritox that it intended to file a Motion to Amend.  In its email Millennium informed Ameritox that it could not provide a copy of the forthcoming motion, but advised that if it did not hear from Ameritox, Millennium would file its motion early the following week and advise the court that Ameritox did not assent.  On February 19, 2013 Ameritox sent an email to Millennium asking Millennium whether it would also seek to push back the trial date and if it would stipulate to the addition of further claims by Ameritox if Ameritox consented to the Motion to Amend.  Millennium wrote back on February 20, 2013 and stated that it would not seek to extend the trial date and that it would not stipulate to the addition of further claims by Ameritox without Ameritox first disclosing those claims.  Before Ameritox could provide the information requested by Millennium and before Ameritox could reply as to whether it agreed to or opposed Millennium's Motion to Amend, Millennium filed its Motion to Amend the next day, February 21, 2013.  At that point, any further meet and confer efforts were made futile and Ameritox was forced to file the present Opposition.

Dated:  March 11, 2013

/s/ Margaret D. Mathews
Margaret D. Mathews
Florida Bar No.: 348430
Richard H. Martin
Florida Bar No.: 579831
**AKERMAN SENTERFITT**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 Telephone
(813) 223-2837 Facsimile
margaret.mathews@akerman.com
richard.martin@akerman.com

Jonathan B. Morton
Florida Bar No.: 0769231
**K&L GATES LLP**
Southeast Financial Center—Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.539.3300
Facsimile: 305.358.7095
jonathan.morton@klgates.com
*Trial Counsel*

Paul W. Shaw
**K&L GATES, LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
(617) 261-3100 telephone
(617) 261-3175 facsimile
paul.shaw@klgates.com
*Admitted Pro Hac Vice*

Michael R. Osterhoff
**K&L GATES LLP**
70 W. Madison St., Ste. 3100
Chicago, IL 60602-4207
(312) 807-4205 telephone
(312) 827-8190 facsimile
michael.osterhoff@klgates.com
*Admitted Pro Hac Vice*

*Attorneys for Ameritox, Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 11, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, as set forth below, via transmission of Notices of Electronic Filing generated by CM/ECF:

James R. Carroll
*Admitted Pro Hac Vice*
Peter Simshauser
*Admitted Pro Hac Vice*
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
One Beacon Street, 31st Floor
Boston, MA  02108
James.Carroll@skadden.com
Peter.Simshauser@skadden.com
Telephone: 617-573-4800
Facsimile:  617-305-4880

Jonathan B. Morton
Florida Bar No. 956872
jonathan.morton@klgates.com
K&L GATES LLP
Southeast Financial Center – Suite 3900
200 South Biscayne Boulevard
Miami, FL 33131-2399
Telephone:  305.539.3300
Facsimile:  305.358.7095

Lance A. Etcheverry
*Admitted Pro Hac Vice*
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Lance.Etcheverry@skadden.com
Telephone:  213-687-5000
Facsimile:  213-621-5432

Margaret D. Mathews
Florida Bar No. 348430
margaret.mathews@akerman.com
Richard H. Martin
Florida Bar No. 579831
richard.martin@akerman.com
AKERMAN SENTERFITT
401 E. Jackson, Street, Suite 1700
Tampa, FL 33602
Telephone:  813.223.7333
Facsimile:  813.223.2837

Peter B. Bensinger, Jr.
*Admitted Pro Hac Vice*
peter.besinger@bartlit-beck.com
BARTLIT, BECK, HERMAN, PALENCHAR
& SCOTT, LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone:  312.494.4426
Facsimile:  312.494.4440

Michael R. Osterhoff
*Admitted Pro Hac Vice*
michael.osterhoff@klgates.com
K&L GATES LLP
70 W. Madison Street, Suite 1300
Chicago, IL 60602-4207
Telephone:  312.827.8190
Facsimile:  312.827.2662

Kevin John Napper
knapper@carltonfields.com
Amanda Arnold Sansone
asansone@carltonfields.com
CARLTON FIELDS
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida  33601
Telephone:  813.223-7000
Facsimile:  813.229.4133

/s/ Margaret D. Mathews
Margaret D. Mathews