UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| AMERITOX, LTD., a Texas limited partnership, | |
| Plaintiff, | |
| v. | CASE NO.: 8:11-CV-00775-SCB-TPM |
| MILLENNIUM LABORATORIES, INC., a California corporation, | |
| Defendant. | |

**AMERITOX, LTD.'S MOTION TO COMPEL JASON BRISTOL
TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA *DUCES TECUM***

Ameritox, Ltd. ("Ameritox"), by and through its attorneys, hereby moves the Court pursuant to Federal Rules of Civil Procedure 37(a)(3)(A) and 45(c)(2)(B)(i) to compel third-party Jason Bristol ("Bristol") to produce documents in response to Subpoena *Duces Tecum*. In support of its Motion, Ameritox states as follows:

## I.    INTRODUCTION

Ameritox and Millennium Laboratories, Inc. ("Millennium") are competitors in the urine drug testing industry. Ameritox filed a lawsuit against Millennium in the United States District Court for the Middle District of Florida for Millennium's unfair and illegal billing practices that began in 2008. To implement these practices, Millennium entered into a formal contract on April 13, 2009, with BNJ Medical Consultants, LLC ("BNJ") and its owners Brandon Worley ("Worley"), Nick DePriest ("DePriest"), and Bristol (collectively "BNJ Individuals") through which they would serve as sales representatives for Millennium and its urine drug testing services. Before entering into the formal agreement, however, the BNJ Individuals provided these types of services for Millennium. Ameritox thus has served subpoenas upon BNJ and the

BNJ Individuals for the production of documents with a time scope of January 1, 2008 through August 29, 2012.   *See* Ex. A (Subpoena to Bristol); Ex. B (Subpoena to DePriest); Ex. C (Subpoena to Worley); Ex. D (Subpoena to BNJ).

Bristol has refused to produce any documents in response to the subpoena.   While Millennium has offered to produce Bristol's personal emails as part of party electronic source information ("ESI") discovery, Millennium's production of this technically third party discovery is insufficient.   While Ameritox and Millennium agreed to apply search terms to make an otherwise overwhelming party ESI production manageable, no such limitations are needed for Bristol's admittedly small set of responsive documents.   Millennium's offer to Bristol was an improper attempt to control third party discovery.

Furthermore, Ameritox and Millennium as parties in the litigation agree that the January 1, 2008 through August 29, 2012 time period is the relevant time period for documents relevant to the claims and defenses in the pending litigation.   The third party BNJ Individuals improperly have made a unilateral determination that documents dated before their formal April 13, 2009 contract are irrelevant and thus refuse to produce these documents.   The BNJ Individuals do not deny that they performed work for Millennium before April 13, 2009, and they do not deny that they have responsive documents in their possession.   This Court should compel Bristol to produce documents dated January 1, 2008 through August 29, 2012.

## II.   BACKGROUND

### A.   Ameritox's Complaint against Millennium for Unfair Business Practices

On April 8, 2011, Ameritox filed its Complaint against Millennium for its unfair billing practices in the case *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, Case No. 8:11-cv-00775-SCB-TBM (M.D. Fla.) ("Florida Litigation").   *See* Dkt. 1; *see also* Dkt. 92.   Ameritox and

Millennium are competitors who both test urine specimens and monitor results for physicians, nurses, and other health care providers treating chronic pain patients, and who prescribe opiates and other controlled pain medications ("Health Care Providers").  *See* Dkt. 92 at ¶ 8.  Because these drugs are susceptible to abuse by the patient or third parties, companies such as Ameritox and Millennium provide urine drug monitoring services for patients who are prescribed the aforementioned medications.  *Id.*

Millennium's business model effectively corrupts the Health Care Provider's decision-making process by, *inter alia*, improperly:

- introducing enormous financial incentives that mislead Health Care Providers into believing that it is lawful for them to accept illegal inducements (*id.* at ¶ 12);

- encouraging medically unnecessary confirmatory testing  (*id.* at ¶¶ 12, 25);

- providing free advice on how to manipulate the coding system to generate multiple billings for tests performed (*id.* at ¶¶ 15, 34);

- waiving co-payments and deductibles even when representing to the patients' insurers that they were collecting these monies (*id.* at ¶¶ 16, 65-86);

- illegally providing free or below market prices on supplies such as point of care urine testing cups ("POCT") (*id.* at ¶¶ 17, 39-43);

- providing consultant services for a nominal fee, far below market value, to assist Health Care Providers in obtaining a waiver of the Clinical Laboratory Improvement Amendment ("CLIA") regulations that is necessary for point-of-care testing to be conducted at the physician's office (*id.* at ¶¶ 23, 46-47); and

- offering fractional ownership arrangements to health care providers (*id.* at ¶¶ 60-62).

Ameritox asserts that Millennium since 2008, its first full year in business, has been engaged in these illegal business practices and that Millennium's illegal business practices violate the

federal Stark and anti-kickback laws.  *See id.* at ¶¶ 13, 27, 29, 51, 66, 129, 143, 156, 174, 200. Based on these, *inter alia*, illegal billing practices, Ameritox asserts against Millennium claims for false advertising in violation of the Lanham Act and various claims under the unfair trade practices or unfair competition statutes or common law of the states of Florida, California, New Hampshire, Tennessee, and Texas.  *See id.* at ¶¶ 103-209.  Ameritox and Millennium, the parties to the litigation, have agreed that the relevant time period for document production collection purposes is January 1, 2008 through August 29, 2012.  *See* Ex. E (May 7, 2013 Email from A. Marchuk and May 8, 2013 Email from P. Simshauser).

> **B.      The Subpoena for the Production of Relevant Documents to Bristol**

To implement its illegal business practices, Millennium uses sales representatives to call upon health care providers and pain and health clinics to sell Millennium's urine drug testing services.  In addition to those sales representatives that are Millennium employees, Millennium also enters into agreements with independent consultants to sell its urine drug testing services. Millennium on April 13, 2009, entered into such a consulting agreement with BNJ.  *See* Ex. J at 2 (January 22, 2013 Letter from D. Rosenbloom); *see also* Ex. L at 2 (March 28, 2013 Letter from D. Rosenbloom); Ex. M at 1 (May 16, 2013 Letter from H. Boice); Ex. N at 1-2 (May 28, 2013 Letter from D. Rosenbloom); Ex. P at 1 (June 25, 2013 Email from J. Baltruzak).

At the time Millennium and BNJ entered into the April 13, 2009 agreement, the individuals acting as BNJ, Worley, DePriest, and Bristol, were individually 1099 independent contractors to Millennium, with DePriest and Bristol having this relationship with Millennium at least as early as January 1, 2008.  *See* Ex. M at 1.  After entering into the April 13, 2009 agreement, BNJ remained under contract with Millennium until August 31, 2009.  *See* Ex. N at 1; *see also* Ex. P at 1 (June 25, 2013 Email from J. Baltruzak).  On September 1, 2012, the BNJ

Individuals became Millennium employees.  *See* Ex. J at 2; Ex. L at 2; Ex. N at 1; Ex. P at 1 (June 25, 2013 Email from J. Baltruzak).

In September 2012, Ameritox issued four subpoenas *duces tecum* to BNJ and the BNJ Individuals.  *See* Exs. A-D.  Ameritox respected that any documents dated after the BNJ Individuals became Millennium employees would be addressed through party discovery.  *See* Ex. G at 1 (September 21, 2012 Letter from J. Morton).  With the subpoenas, Ameritox therefore sought documents from the BNJ Individuals "as employees of BNJ . . . and as individuals and not as current employees of Millennium . . . ."  *Id.*  Thus, "[t]he Subpoenas seek documents from the Individuals in their capacity as members/employees of BNJ and which relate to the issues in the above referenced matter" and that are dated January 1, 2008 through August 31, 2012.  *See id.*; *see also* Ex. O at 1-2 (June 3, 2013 Letter from H. Boice); Exs. A-D at Instruction No. 13 ("the time frame for these Requests is January 1, 2008 to the present").  For example, Ameritox sought documents related to BNJ's or the BNJ Individuals' communications with Millennium's actual or potential customers; documents provided to Millennium's actual or potential customers; sale, marketing, promotion, and pricing of Millennium's products or services; POCT cups, drug testing supplies, in-office chemical analyzers, and any other drug testing devices; communications with third party Aldora Bristol, Bristol's mother, regarding consulting services that she performed for Millennium's customers; and billing for POCT tests.  *See, e.g.,* Exs. A-D at Reqs. Nos. 1, 4-5, 7-14.

### C.    The BNJ Individuals Refuse to Produce Relevant Documents.

After service of the subpoenas, BNJ and the BNJ Individuals served objections to the subpoena and baldly objected that the subpoenas were "not sufficiently limited in time and scope" and that the subpoena was allegedly unduly burdensome to the extent it requested the

production of documents that could be obtained from Millennium where Millennium was a party to the correspondence. *See* Ex. H at 1 (October 17, 2012 Letter from B. Ames). Furthermore, after the BNJ Individuals switched counsel, their new counsel represented that BNJ no longer exists, that it concluded its affairs in spring 2011, that the Florida Secretary of State had administratively dissolved BNJ, and that BNJ has no assets, accounts, or employees. *See* Ex. I at 7 (November 15, 2012 Email from D. Rosenbloom); *see also id.* at 9 (November 13, 2012 Email from B. Ames). BNJ allegedly does not have any documents in its possession as the BNJ Individuals have represented that all responsive documents are in their individual possession. *See id.*

Additionally, the amount of documents the BNJ Individuals needed to produce in response to the subpoenas was significantly narrowed when Millennium agreed to produce through party ESI discovery communications between any of the BNJ Individuals and Millennium. *See* Ex. J at 2. Thus, the scope of documents the BNJ Individuals needed to produce was reduced to their communications with third parties. *See id.*

Despite the narrow scope of the subpoena, Bristol ***has not produced any documents*** in response to the subpoena. *See id.*; *see also* Ex. L at 3. Bristol originally indicated that he was "willing to discuss producing certain documents that may be responsive to [Ameritox's] subpoena." Ex. H at 2. After he switched counsel and without indicating the amount of documents he would need to search, in November and December 2012, Bristol tried to limit the scope of discovery by asking Ameritox to provide search terms to apply to his personal email account to search for responsive documents but also raised for the first time the suggestion that Ameritox should obtain Bristol's personal emails from Millennium. *See* Ex. I at 6 (December 6, 2012 Email from M. Langley); *see also id.* at 5-6 (December 10, 2012 Email from D.

Rosenbloom).  However, on December 10, 2012, Bristol confirmed that he "was on track to produce in the time frame [Ameritox] request[s] most of the materials [he] will be producing in response" to the subpoena.  *See id.* at 5 (December 10, 2012 Email from D. Rosenbloom).  Bristol also had already collected his personal email over nine months earlier and produced them in a separate Millennium litigation.  *See id.* at 5-6 (December 10, 2012 Email from D. Rosenbloom); *see also id.* at 4 (December 13, 2012 Email from M. Langley); *see also id.* at 2-3 (December 28, 2012 Email from M. Langley).

Bristol later suggested again that Ameritox could obtain Bristol's personal emails from Millennium but nevertheless represented that he has only a "small subset of emails that are responsive to [Ameritox's] subpoena . . . ." and that he would "perform the necessary searches, but require that Ameritox bear the costs of that production."  *Id.* at 4 (December 15, 2012 Email from D. Rosenbloom).  In a further attempt to make Bristol's compliance with the subpoena easy, Ameritox suggested that Bristol could take the emails that he previously collected for Millennium for the other litigation and remove any emails contained therein that were sent as a Millennium employee because "[t]here is no reason for any party to expend the time and money collecting emails for a second time."  *Id.* at 2-3 (December 28, 2012 Email from M. Langley).  Bristol rejected this suggestion.  *See* Ex. J at 2.

On January 22, 2013, after months of promising to produce documents, Bristol changed his position and refused to produce documents.  *See id.*  Even though Bristol had collected his emails a year earlier for a document production, Bristol said he "would have to make a new collection and search, meaning that [his] personal email will have been collected a second time," misconstrued Ameritox's compromise as an agreement that he need not produce documents, and was allowing Millennium to control his BNJ employee document production through party

discovery.  *See id.*; *see also* Ex. L at 3.  Ameritox objected to the alleged arrangement between Bristol and Millennium because Bristol has an obligation to comply with the subpoena and Ameritox already offered to reimburse Bristol for the cost of the production.  *See* Ex. K at 2 (March 14, 2013 Letter from J. Morton).  Ameritox later agreed to review Millennium's document production of Bristol's personal emails while reserving its rights to obtain these documents through the subpoena to Bristol should Millennium's document production be incomplete.  *See* Ex. M at 2.

Furthermore, on January 22, 2013, the BNJ Individuals through their replacement counsel improperly attempted to expand their October 17, 2012 objections to the subpoena to object to the production of any documents dated before the April 2009 date upon which the BNJ Individuals entered into the formal consulting agreement with Millennium.  *See* Ex. J at 1-2.[1] Ameritox has repeatedly informed the BNJ Individuals that the parties in the underlying litigation have agreed that the time period for responsive documents is January 1, 2008 through August 29, 2012, but the BNJ Individuals hold steadfast in their refusal to produce documents dated before BNJ entered into the formal April 13, 2009 consulting agreement with Millennium. *See* Ex. K at 1-2; Ex. L at 2; Ex. M at 1; Ex. N at 1-2; Ex. O at 1-2; Ex. P at 2 (June 18, 2013 Email from J. Baltruzak); *id.* at 2 (June 20, 2013 Email from H. Boice); *id.* at 1 (June 25, 2013 Email from J. Baltruzak); Ex. Q at ¶ 3 (Decl. of Heather A. Boice regarding September 16, 2013 telephone conference with J. Baltruzak).

---

[1] The BNJ Individuals previously represented that BNJ's consulting agreement with Millennium began on April 6, 2009, such that they produced documents dated between April 6, 2009 and April 13, 2009.  *See* Ex. J at 2; *see also* Ex. L at 2.  After they clarified that the date of the consulting agreement was April 13, 2009, the BNJ Individuals revised their objection accordingly to object to producing documents dated before April 13, 2009.  *See id.* at 2 n.1.

The BNJ Individuals now misconstrue Ameritox's good faith explanation that the subpoenas only seek documents from the BNJ "Individuals in their capacity as members/employees of BNJ" (Ex. G at 1-2), to suggest that Ameritox limited the subpoenas to the April 13, 2009 through August 31, 2009 time period of the formal consulting agreement.[2] *See* Ex. P at 1 (June 25, 2013 Email from J. Baltruzak).   No reasonable interpretation of Ameritox's representation narrows the scope of the subpoena to the time period of the formal consulting agreement.   Notably, the BNJ Individuals have never disputed that they performed work for Millennium before entering into the formal April 13, 2009 consulting agreement or that they have in their possession responsive documents from the January 1, 2008 through April 13, 2009 time period.  *See* Ex. J at 1-2; Ex. K at 1-2; Ex. L at 2; Ex. M at 1; Ex. N at 1-2; Ex. O at 1-2; Ex. P at 2 (June 18, 2013 Email from J. Baltruzak); *id.* at 2 (June 20, 2013 Email from H. Boice); *id.* at 1 (June 25, 2013 Email from J. Baltruzak).

Ameritox and the BNJ Individuals have resolved all disputes regarding the scope of categories of requested documents other than Bristol's complete refusal to produce documents and the BNJ Individuals' continued refusal to produce documents from the January 1, 2008 through April 13, 2009 time period.  *See* Ex. Q at ¶ 3.[3]   Millennium's production of Bristol's

---

[2] The BNJ Individuals suggest that Ameritox is changing the scope of its earlier representation because Ameritox has changed counsel.  *See* Ex. P at 1 (June 25, 2013 Email from J. Baltruzak). While Ameritox was represented by K&L Gates LLP in the September 21, 2012 Letter and is now represented by Perkins Coie LLP, this change occurred because Michael Osterhoff, Ameritox's lead counsel in the underlying litigation, moved firms.  *See* Ex. F (Notice of Change of Address and Change of Law Firm).  The BNJ Individuals, however, switched counsel from DLA Piper LLP to McDermott Will & Emery as a result of a conflict and then attempted to expand their objections.  *See* Ex. I at 9 (November 13, 2012 Email from B. Ames); *see also* Ex. J at 1-2.

[3] The BNJ Individuals also refused to produce documents in response to Request No. 3 regarding the compensation they received from Millennium.  *See* Exs. A-C at Req. No. 3; *see also* Ex. L at 4; Ex. N at 2.  Ameritox agreed to seek these documents from Millennium, but it has reserved its

personal emails is insufficient such that Ameritox is forced to move this Court to compel Bristol to produce these documents. Ameritox also moved to compel the production of these documents from DePriest and Worley respectively in the United States District Court for the Middle District of North Carolina and the United States District Court for the Northern District of Ohio.[4]

## III.   ARGUMENT

### A.   Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "Rule 26(b)(1) . . . strongly favor[s] full discovery whenever possible." *Moore v. Lender Processing Servs., Inc.*, No. 3:12-cv-205-J-UATCMCR, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013). "'The Courts have long held that relevance for discovery purposes is much broader than relevance for trial purposes,' and as such '[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has **no possible** bearing on the subject matter of the action.'" *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) (emphasis added in original) (citation omitted). Thus, "[t]he district court has broad discretion" to compel discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1291, 1306 (11th Cir. 2011). Thus, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents . . . ." FED. R.

---

right to seek these compensation documents from the BNJ Individuals if Millennium refuses to produce this information. *See* Ex. O at 1.

[4]  Worley and DePriest produced responsive documents that are dated between April 13, 2009 and August 31, 2009. *See* Ex. J at 1-2; *see also* Ex. K at 1-2; Ex. L at 1-2; Ex. M at 1; Ex. N at 1-2; Ex. O at 1-2. Ameritox thus only moved to compel the production of documents dated January 1, 2008 through April 13, 2009.

CIV. P. 34(c)); *see also* FED. R. CIV. P. 45(a)(1); FED. R. CIV. P. 45(c)(2)(B)(i).  Bristol should be

compelled to produce documents responsive to the subpoena.

### B.    Bristol Should Be Compelled to Produce Documents in Response to All Requests in the Subpoena.

In the subpoena, Ameritox seeks the following categories of documents:

**REQUEST 1** : All documents, including emails and/or other correspondence, between you and any past, potential, or current customer of Millennium, including, but not limited to, all documents provided to any physician or physician practice.

**REQUEST** 2: All contracts, terms, stipulations, proposals and/or agreements of any kind between you and Millennium and/or you and MLCS.

. . .

**REQUEST 4:** All documents concerning the sale, marketing, promotion, provision and pricing of Millennium or MLCS products or services.

**REQUEST 5:** All documents, including emails and/or other correspondence, between you and any current or former Millennium or MLSC employee related to Millennium or MLCS products and services, including sample emails sent to Millennium employees concerning what the employee should send to prospective customers.

**REQUEST 6:** All documents concerning Ameritox or any competitors of Millennium.

**REQUEST** 7: All documents concerning POCT cups, drug testing supplies (including reagents), in-office chemical analyzer(s) and/or any other drug testing devices.

**REQUEST 8:** All documents, including emails and/or other correspondence, between you and Aldora Bristol or any entity affiliated with Aldora Bristol related to consulting services.

**REQUEST 9:** All documents, including emails and/or other correspondence, between you and Sunshine Toxicology, Capital Toxicology, Universal Oral Fluids, Total Healthcare, Business Partners in Healthcare, United Toxicology, US Tox LLC, National Toxicology, Gulf Coast Toxicology, Central Texas Toxicology, Medicus Laboratories LLC, United Bio Source Corporation, HealthNet, Andrew Hillman, Jeffrey Wasserman, Jeffrey Wise, Semyon Narasov,

and/or Kenneth Powell, or any entity or person affiliated with any of the aforementioned.

**REQUEST 10:** All documents, including electronic address books, that lists physician or physician practices contacted by you.

**REQUEST 11:** All documents provided to any Millennium customer (both existing and prospective) or other Millennium employee relating in any manner to billing for POCT tests, including without limitation: all actual or sample Remittance Advices, EOB ("Explanation of Benefits") or CMS 1500 claim forms; and a document entitled "Billing Considerations."

**REQUEST 12:** All billing manuals, including the "Billing Manual" distributed to Millennium sales representatives at a Regional Sales Meeting in Dallas, Texas in approximately June, 2010.

**REQUEST 13:** All documents from CodeMap, Charles Root, Hogan Lovells and/or any other opinions of third parties that were distributed or exhibited to past, present or potential Millennium customers.

**REQUEST 14:** All documents referred to as the "Physician's Standing Order," "Test Protocol," "Customer Profile," "POCT Custom Profile" "UDS Protocol" or any other forms provided to past, current or potential Millennium customers.

**REQUEST 15:** All documents related to the training of Millennium employees on Millennium's or MLCS products or services.

**REQUEST 16:** All documents provided to any governmental body, including those provided to the federal Grand Jury in Boston, MA.

Ex. A at Reqs. Nos. 1-16.

In response to the subpoena, on October 17, 2012, Bristol served the following

boilerplate objections:

This letter constitutes Jason Bristol, Nick DePriest, Brandon Worley, and BNJ Medical Consultants, LLC's ("BNJ parties") Rule 45 objections to the subpoenas that our firm accepted service of on October 3, 2012.

First, the BNJ parties object to each request to the extent that it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine or any other privilege or protection against disclosure.

Second, the BNJ parties object to each and every request as being overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of

admissible evidence and not sufficiently limited in time and scope. By way of example, the subpoenas seek *all* e-mail correspondence between the BNJ parties and *any* past, potential, or current customer of Millennium and *all* documents including e-mails relating to *any* competitors of Millennium.

Third, the BNJ parties object to each request to the extent that it purports to require the BNJ parties to produce documents that can be obtained directly from Millennium without imposing unnecessary burden and expense on the BNJ parties. This includes, for instance, requests for correspondence with Millennium employees, requests for Millennium contracts, requests for Millennium billing manuals, requests for Millennium marketing materials, requests for Millennium training materials, and requests for documentation of compensation paid by Millennium.

Fourth, the BNJ parties object to each request to the extent it seeks the production of any confidential or proprietary documents, and objects to the requests to the extent they purport to impose burdens or obligations on the BNJ parties that exceed the requirements of the Federal Rules of Civil Procedure.

Without waving any of these objections, we are willing to discuss producing certain documents that may be responsive to your subpoena.

Ex. H at 1-2 (emphasis in original).  Bristol's boilerplate objections lack any specificity and are

meritless.  *See Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL

6936485, at *3 (M.D. Fla.  Dec. 7, 2011) ("'Objections which state that a discovery request is

'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed

without merit by this Court.'") (citations omitted).

### 1. Bristol Waived Any Objection to Producing Documents from His Personal Email and to the Relevant January 1, 2008 through August 29, 2012 Time Period as the Scope of the Subpoena.

"Federal courts have held that Rule 45 'require[s] the recipient of a subpoena to raise all

objections at once, rather than in staggered batches, so that discovery does not become a

'game.'"  *Sanford v. Stewart*, No. 5:11CV2360, 2012 WL 5271692, at *3 (N.D. Ohio Oct. 24,

2012) (citations omitted).  "Thus, 'Rule 45 contemplates assertion of all objections to document

production within 14 days.'"  *Id.* (citation omitted).  Bristol "[t]he party objecting to the

discovery request has the burden to explain, with specificity, why the request is unduly burdensome, vague, or overly broad." *Siddiq*, 2011 WL 6936485, at *3. Bristol did not provide such specificity in his original October 17, 2012 objections where he baldly objected that the subpoena was "not sufficiently limited in time and scope" and that the subpoena was allegedly unduly burdensome to the extent it requested the production of documents that could be obtained from Millennium where Millennium was a party to the correspondence. *See* Ex. H at 1.

Bristol later recognized that his initial objections were insufficient such that he attempted to expand his October 17, 2012 objections to (1) object to the production of any documents as unduly burdensome because Millennium would produce documents on his behalf, and (2) object to the production of any documents dated before the April 2009 date upon which the BNJ Individuals entered into the formal consulting agreement with Millennium. *See* Ex. I at 2-6; *see also* Ex. J at 1-2; Ex. L at 3. Bristol's attempt to expand his objections to provide specificity is futile because "[o]bjections not timely raised are waived." *Sanford*, 2012 WL 5271692, at *3 (citations omitted); *see also id.* (the court held as waived any additional objections the subpoenaed party made after the initial time period allowed for objections); *see also Siddiq*, 2011 WL 6936485, at *3 ("A party who fails to assert objections to discovery within the time permitted by the rule, stipulation or court order, waives any objections and is precluded 'from asserting the objection in a response to a motion to compel.'") (quoting Middle District Discovery (2001) at 11, III.A.6.).

Bristol thus has waived any objection to the production of documents based on Millennium's party discovery and any objection to the scope of the subpoena as covering the time period January 1, 2008 through August 29, 2012. Bristol should be ordered to produce

documents in response to the subpoena for the entire January 1, 2008 through August 29, 2012 time period.

### 2.      Bristol's Undue Burden Argument Is Unsubstantiated.

"[T]he burden rests on [Bristol] the party resisting discovery to show why the requested discovery should not be permitted." *Gates v. Travelers Commercial Ins. Co.*, No. 3:12-cv-349-J-32TEM, 2012 WL 6186415, at *2 (M.D. Fla. Dec. 12, 2012).  "The burden on the resisting party [Bristol] is to specifically show how the objected-to request is unreasonable, irrelevant or otherwise unduly burdensome." *Id.*  "This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents." *General Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 641 (D. Kan. 2003) (citations omitted).

Bristol cannot satisfy this burden as he has proffered no suggestion of undue burden in time or expense needed to gather and produce documents.  At least nine months before Ameritox served its subpoena upon Bristol, he had already compiled all of his personal emails in response to discovery requests in another litigation involving Millennium.  *See* Ex. I at 5-6 (December 10, 2012 Email from D. Rosenbloom); *see also id.* at 4 (December 13, 2012 Email from M. Langley); *see also id.* at 2-3 (December 28, 2012 Email from M. Langley).  The amount of time to search for responsive documents cannot be unduly burdensome because Bristol has represented that he has only a "small subset of emails that are responsive to [Ameritox's] subpoena . . . ." *Id.* at 4 (December 15, 2012 Email from D. Rosenbloom).  Furthermore, Ameritox has offered to reimburse Bristol for the costs in producing the responsive documents. *See* Ex. K at 2.

Furthermore, Millennium's offer to produce Bristol's personal emails through party discovery appears to be an attempt by Millennium to preclude Ameritox from taking relevant third party discovery.   Millennium's production of Bristol's personal emails are significantly narrowed by the nature of party production of ESI discovery which necessitates the use of search terms to make overwhelming amounts of data manageable and to bring the cost within a reasonable amount.   Bristol's admittedly "small subset of emails" in his personal email does not require such limiting search terms.   His BNJ counterparts Worley and DePriest produced documents without requiring search terms.   Bristol thus cannot hide behind Millennium.   *See Lockwood v. Shands Jacksonville Med. Ctr.*, No. 3:09-cv-376-J-20MCR, 2010 WL 2035117, at *4 (M.D. Fla. May 21, 2010) (citation omitted) ("For purposes of Rule 34, absent an objection, a party 'must produce any requested documents in her possession, custody or control regardless of whether it can be obtained from a third party.'").   Bristol should be ordered to comply with his obligations under the subpoena to produce responsive documents from his personal email.

> **3.    Bristol Should Be Compelled to Produce Relevant Documents from the Agreed upon Relevant Time Period January 1, 2008 through August 29, 2012.**

Bristol's belated refusal that even if documents were produced he should not have to produce documents from the time period of January 1, 2008 through April 13, 2009, is also baseless for several reasons.   First, Bristol's current employer Millennium, the defendant in the Florida Litigation and about whose business the requested documents concern, agrees that the relevant time period is January 1, 2008 through August 29, 2012.   *See* Ex. E; *see also* Ex. A at Instruction No. 13.   Ameritox asserts in its Amended Complaint that Millennium's illegal business practices have been ongoing since 2008, which was the first full year Millennium was in business and the year in which at least the BNJ Individuals DePriest and Bristol were

individually 1099 independent contractors to Millennium. *See* Dkt. 92 at ¶¶ 29, 66; *see also* Ex. M at 1. Thus, documents dated during the January 1, 2008 through August 29, 2012 time period are relevant to the claims and defenses pending in the Florida Litigation. *See Wilkinson v. Greater Dayton Reg'l Transit Auth.*, No. 3:11CV00247, 2012 WL 3527871, at *11-12 (S.D. Ohio Aug. 14, 2012) (even though the defendant objected that the requested time period for document production included two years before the statute of limitations period, the court compelled production because the temporal scope of relevant discovery includes information before and after the liability period for a total of a six-year relevant discovery time period); *see also U & I Corp. v. Advanced Med. Design, Inc.*, No. 806CV2041T17EAJ, 2007 WL 4181900, at *2-3 (M.D. Fla. Nov. 26, 2007) (the court found that the time period scope of the subpoena for the production of documents was reasonable because it was the same time period as the occurrence of the allegations in the complaint); *JAT, Inc. v. Nat'l City Bank of Midwest*, No. CIVA 06-CV-11937-DT, 2007 WL 1880389, at *2 (E.D. Mich. June 29, 2007) (defining a five-year period as the temporal scope of allowable discovery which included one year before the date of the occurrence of the allegations in the complaint).

Second, the subpoena seeks relevant information because the requests are narrowly tailored to documents regarding Bristol's involvement with Millennium and his efforts to sell Millennium's urine drug testing services such as his communications with Millennium's actual or potential customers; documents he provided to Millennium's actual or potential customers; his sale, marketing, promotion, and pricing of Millennium's products or services; information he has regarding POCT cups, drug testing supplies, in-office chemical analyzers, and any other drug testing devices; his communications with third party Aldora Bristol, Bristol's mother, regarding consulting services that she performed for Millennium's customers; and his documents regarding

billing for POCT tests.  *See* Ex. A at Reqs. Nos. 1, 4-5, 7-14.  These issues are all relevant to Ameritox's allegations against Millennium in the Florida Litigation.  *See, e.g.,* Ex. Dkt. 92 at ¶¶ 12, 15-17, 23, 25, 34, 39, 43, 60-62, 65-86.  Moreover, Bristol did not dispute that the categories of requested documents are relevant and originally agreed on multiple occasions to produce responsive documents.  *See* Exs. J-P; Ex. H at 2; Ex. I at 5 (December 10, 2012 Email from D. Rosenbloom); *id.* at 4 (December 15, 2012 Email from D. Rosenbloom); *see also Siddiq*, 2011 WL 6936485, at *4 (granting motion to compel because "[b]y indicating that it will produce documents if and when they become available, Defendant has waived its relevancy objections").  Bristol thus recognizes that the categories of documents requested in the subpoena are relevant to the claims and defenses in the Florida Litigation.  *See* Ex. A at Reqs. Nos. 1-16.

Third, Bristol does not deny that he performed work for Millennium during the January 1, 2008 through April 13, 2009 time period, and he does not deny that he has documents that are responsive to the subpoena.  *See* Ex. J at 1-2; Ex. K at 1-2; Ex. L at 2; Ex. M at 1; Ex. N at 1-2; Ex. O at 1-2; Ex. P at 2 (June 18, 2013 Email from J. Baltruzak); *id.* at 2 (June 20, 2013 Email from H. Boice); *id.* at 1 (June 25, 2013 Email from J. Baltruzak); *see also S.E.C. v. Rex Venture Grp., LLC*, 5:13-MC-004-WTH-PRL, 2013 WL 1278088, at *4 (M.D. Fla. Mar. 28, 2013) (the court ordered the subpoenaed party to produce documents because the "requests all appear to be aimed at ascertaining [the subpoenaed party's] involvement with [the defendant], which seems to be a relevant issue in the [case]"); *In re Bank One Sec. Litig., First Chicago S'holder Claims*, 209 F.R.D. 418, 427 (N.D. Ill. 2002) (denying a party's unilateral attempt to curtail the relevant time period for discovery to pre-merger documents because post-merger documents were likely to be relevant); *Royal Surplus Lines Ins. v. Sofamor Danek Grp.*, 190 F.R.D. 463, 467-68 (W.D. Tenn. 1999) (compelling discovery from a third party who was "heavily involved" in the

allegations in the complaint because "the court [was] not inclined to view [the third party] as an innocent bystander needlessly entangled in burdensome discovery").

Fourth, Ameritox cannot obtain the documents from Millennium because Ameritox narrowed the scope of the subpoena to seek documents from Bristol in his individual capacity and as an employee of BNJ.  *See* Ex. G at 1; Ex. O at 1-2.  Also, the subpoena seeks Bristol's communications with third parties for which Millennium likely was not a party to the communication.  *See, e.g.,* Ex. A at Reqs. Nos. 1, 4-5, 7-14; *see also Advanced Med.*, 2007 WL 4181900, at *3 (ordering third party discovery that was not in the possession of the parties to the litigation).

Finally, "the existence of relevancy . . . is not a unilateral determination for the attorney seeking the discovery, nor for the attorney representing the [discovery request recipient]." *Uszak v. Yellow Transp.,* No. 1:06CV837, 2006 WL 3146424, at *1 (N.D. Ohio Oct. 31, 2006). The Court makes the ultimate determination.  *See id.*  As explained above, the requested discovery is relevant to Ameritox's claims against Millennium.   Bristol's unilateral date restriction improperly excludes relevant information that Ameritox needs to prove its case against Millennium.  *See Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 251 (M.D.N.C. 2010) (withholding documents based on a unilateral determinations of relevance "impedes the discovery litigation process").   Bristol thus should be compelled to produce responsive documents from January 1, 2008 through August 29, 2012, including the January 1, 2008 through April 13, 2009 time period.[5]

### D.     NOTICE OF 3.01(G) CONFERENCE WITH COUNSEL

---

[5]  Ameritox is not asking Bristol to produce any documents as a Millennium employee. However, to the extent he generated any documents in completing BNJ business after he became an employee, those documents up through August 29, 2012 should also be produced.

Counsel for Ameritox certifies that they conferred with counsel for Bristol, and counsel failed to agree on the resolution of this motion.

## IV.    CONCLUSION

For the foregoing reasons, Ameritox respectfully asks this Court to compel Bristol to produce in response to the subpoena *duces tecum* documents from the time period January 1, 2008 through April 13, 2013.

Dated:  October 10, 2013                     Respectfully submitted,

*/s/ Margaret D. Mathews*
Margaret D. Mathews
Florida Bar No.: 348430
Richard H. Martin
Florida Bar No.: 579831
**AKERMAN SENTERFITT**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 223-7333
Facsimile: (813) 223-2837 Facsimile
margaret.mathews@akerman.com
richard.martin@akerman.com

Michael R. Osterhoff (*Admitted Pro Hac Vice*)
Adam L. Marchuk (*Admitted Pro Hac Vice*)
**PERKINS COIE LLP**
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
mosterhoff@perkinscoie.com
amarchuk@perkinscoie.com

*Counsel for Ameritox, Ltd.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 10, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, as set forth below:

via transmission of Notices
of Electronic Filing generated
by CM/ECF:
James R. Carroll
*Admitted Pro Hac Vice*
Peter Simshauser
*Admitted Pro Hac Vice*
Christopher Lisy
*Admitted Pro Hac Vice*
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
One Beacon Street, 31st Floor
Boston, MA 02108
Telephone: 617-573-4800
Facsimile: 617-573-4822
James.Carroll@skadden.com
Peter.Simshauser@skadden.com
christopher.lisy@skadden.com

via transmission of Notices of Electronic Filing
generated by CM/ECF:
Margaret Diane Mathews
Florida Bar No. 348430
Richard H. Martin
Florida Bar No. 579831
**AKERMAN SENTERFITT**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Telephone: 813-223-7333
Facsimile: 813-223-2857
Margaret.Mathews@akerman.com
Richard.Martin@akerman.com

via transmission of Notices
of Electronic Filing generated
by CM/ECF:
Lance A. Etcheverry
*Admitted Pro Hac Vice*
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213-687-5000
Facsimile: 213-621-5432
Lance.Etcheverry@skadden.com

Michael R. Osterhoff
*Admitted Pro Hac Vice*
Adam L. Marchuk
*Admitted Pro Hac Vice*
**PERKINS COIE LLP**
131 S. Dearborn Street, Suite 1700
Chicago, IL  60603
Telephone: 312-324-8400
Facsimile:  312-324-9400
MOsterhoff@perkinscoie.com
AMarchuk@perkinscoie.com

**via hand delivery and via transmission
of Notices of Electronic Filing generated
by CM/ECF**:

Kevin John Napper
Amanda Arnold Sansone
**CARLTON FIELDS, PA**
4221 W. Boy Scout Boulevard, Suite 1000
P.O. Box 3239
Tampa, FL  33601
Telephone: 813-223-7000
Facsimile: 813-229-4133

**via hand delivery and via email**:
David S. Rosenbloom
Jeffrey Baltruzak
McDermott Will & Emery
227 West Monroe Street
Chicago, Illinois  60606-5096
Telephone:  312-372-2000
Facsimile:  312-984-7700
drosenbloom@mwe.com
jbaltruzak@mwe.com

_/s/ Margaret D. Mathews_____
  Margaret D. Mathews