UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERITOX, LTD.,

    Plaintiff,

v.                                                      Case No.: 8:11-cv-775-T-24-TBM

MILLENNIUM LABORATORIES, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Ameritox, Ltd.'s Motion for Partial Summary Judgment. (Doc. No. 337-1). Millennium Laboratories, Inc. opposes the motion. (Doc. No. S-365). The Court issued an order denying in part and deferring in part this motion. (Doc. No. 397). To the extent that the Court deferred ruling, the Court heard oral argument on May 2, 2014. As explained below, to the extent that the Court deferred ruling, the motion is granted in part and denied in part.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

Ameritox and Millennium are clinical laboratories that screen urine specimens for the presence of drugs. They are competitors in the industry and have been engaged in extensive litigation for several years.

Relevant to this motion are Ameritox's claims that Millennium engaged in unfair competition based on Millennium's provision of free point-of-care ("POC") testing cups ("POCT cups") to doctors.[1] The free POCT cups contain POC test strips inside the cups that detect the presence of certain drugs in the patient's urine and provide immediate preliminary results to the doctors while the patient is in the doctor's office. The doctors receiving the free POCT cups from Millennium agree not to bill for the POC testing using POCT cups and agree to return the POCT cups to Millennium for confirmatory testing. Alternatively, doctors can purchase POC test strips and/or POCT cups from Millennium or other suppliers, and then the doctors may be able to bill the patient for the POC testing. Ameritox asserts in a separate filing that whether the doctor can bill for the POC testing using POCT cups when the doctor purchases the POCT cups depends on whether the doctor bills for testing done by using a chemical analyzer. (Doc. No. 429). Furthermore, Ameritox contends that billing for chemical analyzer testing produces a far greater reimbursement than billing for POC testing using a POCT cup. (Doc. No. 429).

---

[1]Ameritox also contends that Millennium's representations regarding the free POCT cups can form the basis for a Lanham Act claim, but the Court has already rejected this argument when ruling on Millennium's motion for summary judgment. (Doc. No. 398, p. 8-10).

At issue in the instant case is Millennium's provision of free POCT cups to doctors who agree that: (1) they will not bill their patients (or their insurance companies) for the POC tests; (2) they will not use the free POCT cups for any reason other than to collect the urine samples, obtain the preliminary results, and then transport the urine samples to Millennium for confirmatory testing; and (3) they will work with Millennium to account for the cups to ensure that none of the cups are used for billable POC testing. (Doc. No. 337-6). Ameritox contends that the provision of free POCT cups violates the Anti-Kickback Statute ("AKS") and/or the Stark Law. Millennium does not dispute that it gives doctors free POCT cups, but it argues that such conduct, under the facts of this case, does not violate the AKS or Stark Law. If such conduct is found to violate the AKS or Stark Law, then Ameritox contends that such conduct provides a basis for liability under Ameritox's unfair competition claims in Counts II through VII.

### III.  Motion for Partial Summary Judgment

Ameritox moves for partial summary judgment on the issue of whether Millennium's provision of free POCT cups to doctors violates the AKS (42 U.S.C. § 1320a-7b(b)(2)) and/or the Stark Law (42 U.S.C. § 1395nn).[2]  Accordingly, the Court will analyze both statutes.

#### A.  Stark Law

Ameritox argues that it is entitled to summary judgment on its contentions that Millennium's provision of free POCT cups violates the Stark Law. The Stark Law prohibits

---

[2]Neither the Stark Law nor the AKS provides a private right of action, and as such, Ameritox is using the alleged violation of the Stark Law and AKS as the basis for its Lanham Act and unfair competition claims. See U.S. v. Halifax Hospital Medical Center, 2014 WL 68603, at *4, *4 n.2 (M.D. Fla. Jan. 8, 2014); U.S. ex rel. Osheroff v. Tenet Healthcare Corp., 2013 WL 1289260, at *1 (S.D. Fla. Mar. 27, 2013).

doctors from referring their Medicare and Medicaid patients to business entities with which the doctors have a financial relationship.  See  U.S. v. Halifax Hospital Medical Center, 2014 WL 68603, at *2 (M.D. Fla. Jan. 8, 2014); 42 U.S.C. § 1395nn(a)(1)(A).  One example of a financial relationship is a compensation arrangement.  42 U.S.C. § 1395nn(a)(2)(B).  With certain exceptions, a compensation arrangement is an arrangement involving any remuneration—directly or indirectly, overtly or covertly, in cash or in kind—between a doctor and the entity.  42 U.S.C. § 1395nn(h)(1).  Thus, the Stark Law prohibits doctors who have a compensation arrangement with an entity from making referrals of Medicare or Medicaid patients for clinical laboratory services to that entity.  See Halifax, 2014 WL 68603, at *9; U.S. ex rel. Osheroff v. Tenet Healthcare Corp., 2013 WL 1289260, at *1 (S.D. Fla. Mar. 27, 2013); 42 U.S.C. § 1395nn(a)(1)(A); 42 U.S.C. § 1395nn(a)(2)(B); 42 U.S.C. § 1395nn(h)(6).

Remuneration is defined under the statute as "includ[ing] any remuneration, directly or indirectly, overtly or covertly, in cash or in kind."  42 U.S.C. § 1395nn(h)(1)(B).  One exception to the broad definition of remuneration is the provision of items that are used solely to collect, transport, process, or store specimens for the entity providing the item. 42 U.S.C. § 1395nn(h)(1)(C)(ii)(I).  Another exception to the broad definition of remuneration is the provision of items that are used solely to communicate the results of tests for the entity providing the item.  42 U.S.C. § 1395nn(h)(1) (C)(ii)(II).  In this case, the parties dispute two things: (1) whether Millennium's provision of free POCT cups is remuneration, and if so, (2) whether Millennium's provision of free POCT cups falls within these exceptions to the broad definition of remuneration.

**1.  Remuneration**

The parties dispute whether Millennium's provision of free POCT cups is remuneration. Millennium argues that because it requires that doctors who are given free POCT cups cannot bill the patients or their insurance for the POC testing using POCT cups, Millennium has not given the doctors anything of *financial* value, and as such, it has not violated the Stark Law. Millennium argues that in such a situation, the doctor's use of the free POCT cups results in a lost revenue opportunity for the doctors, because they cannot bill for the POC testing using the POCT cups.[3] Furthermore, Millennium de-emphasizes the value provided by the POCT cups' immediate preliminary results by characterizing it the following way:

> The purpose for the test strips in these cups is to provide a possible deterrent for patients who may consider deviating from their prescribed regimen; any unexpected preliminary results can trigger a conversation with the patient while still at the office.  It also allows the health care provider to write a short (3-5 day) prescription with some confidence until more comprehensive test results are received from the clinical laboratory.

(Doc. No. 328-36, p. 10).  Thus, Millennium emphasizes that the POCT cups' immediate preliminary results advance patient care and do not involve any financial benefit to the doctors.

Ameritox, on the other hand, focuses on two primary arguments: (1) the POCT cups' immediate preliminary results provide a value that the doctor would not have if standard specimen cups were used; and (2) doctors receive a financial benefit from the POCT cups in the form of cost savings due to the doctors not having to buy the POCT cups in order to get immediate preliminary results.

---

[3]The POCT cups cost approximately $5, and the doctors can bill approximately $20 for the POC testing.

Ameritox asserts in a separate filing that doctors who choose to batch-test urine specimens at the end of the day by using an in-office chemical analyzer (and then later submitting the samples to Millennium for confirmatory testing) could not also bill for POC testing the same urine samples using a POCT cup regardless of whether the doctor purchased the POCT cups. (Doc. No. 429). In such a situation, use of Millennium's free POCT cups provided a cost-savings to doctors who wanted an immediate test result while the patient was in the doctor's office, because: (1) the POCT cups were provided for free; and (2) the doctors were unable to bill for the POC testing done with a POCT cup because they were instead choosing to bill for the much greater revenue generating chemical analyzer testing.[4] (Doc. No. 429). Therefore, in this type of situation, it is clear that the doctors were getting a double benefit from the free POCT cups in the form of (1) valuable preliminary test results (2) from a cup that the doctors did not have to pay for.

Furthermore, Ameritox focuses on the fact that the POCT cups' immediate preliminary results provide a value that the doctor would not have if standard specimen cups were used. A POCT cup combines a standard specimen cup with test strips that can immediately detect the presence or absence of drugs in a urine sample:

---

[4]According to Ameritox, doctors could choose to bill for the POC testing done with a POCT cup (at a reimbursement rate of approximately $20 per specimen) or bill for the chemical analyzer testing (at a reimbursement rate of approximately $180 per specimen), but the doctors could not bill for both types of testing. (Doc. No. 429).



Standard Specimen Cup       POC Test Strips       POC Test Cup

Millennium does not appear to dispute that the provision of free test strips themselves would be remuneration under the Stark Law.  However, Millennium appears to argue that because the test strips are inserted into a standard specimen cup, the test strips are no longer remuneration because the doctors do not bill for the information that the test strips provide.

To the extent that the doctors could bill for the POC testing done using a POCT cup but decline to do so solely because they agreed to Millennium's requirement not to bill for the POC testing, the Court finds that a genuine issue of material fact exists regarding whether the provision of free POCT cups in this scenario constitutes remuneration.  Instead, in such a situation, it appears that the doctors are giving up the ability to bill for POC testing, which is giving up the opportunity to net approximately $15 per specimen.  Thus, whether the free POCT cups constitute remuneration in this scenario must be determined by the jury.

However, to the extent that the doctors could not bill for the POC testing done using a POCT cup for other reasons (such as, because they were using chemical analyzers to test the specimens), then Millennium's provision of free POCT cups did provide a valuable benefit to the

7

doctors in the form of the free preliminary test results that the doctors could not have obtained without purchasing a POCT cup. In this situation, the doctors obtained a preliminary test result without having to pay for the POCT cup and without giving up the opportunity to bill for the POC testing done using a POCT cup. Therefore, in this situation, Millennium's provision of free POCT cups constitutes remuneration under the Stark Law.

## 2. Exceptions to the Definition of Remuneration

Because the Court concludes that the provision of free POCT cups may be remuneration under the Stark Law (depending on the circumstances), the Court must consider Millennium's argument that the POCT cups fall within the exceptions to the definition of remuneration.

One exception to the broad definition of remuneration is the provision of items that are used solely to collect, transport, process, or store specimens for the entity providing the item. 42 U.S.C. § 1395nn(h)(1)(C)(ii)(I). Another exception to the broad definition of remuneration is the provision of items that are used solely to communicate the results of tests for the entity providing the item. 42 U.S.C. § 1395nn(h)(1) (C)(ii)(II). The parties dispute whether Millennium's provision of free POCT cups falls within these exceptions to the broad definition of remuneration.

In the Court's prior summary judgment order in which it deferred ruling (Doc. No. 397), the Court noted that it was persuaded by the fact that Florida's Agency for Health Care Administration ("AHCA") contacted Millennium in June of 2012 regarding its provision of free POCT cups and asserted that the free POCT cups were a kickback for patient referrals. (Doc No. 328-36). Millennium responded to AHCA in June of 2012 with its Plan of Correction, stating that the provision of free POCT cups was not a kickback, because the doctors could not bill for

the POC testing. (Doc. No. 328-36). Additionally, Millennium asserted that the free POCT cups are used solely for the purpose of collecting, processing, storing and transporting specimens to the laboratory as permitted by AHCA rule 59A-7.020(14)(c).[5] (Doc. No. 328-36). It has been almost two years, and AHCA has not responded to Millennium's Plan of Correction. (Doc. No. 328-36).

The Court, however, did not glean the full story from the voluminous filings in this case and did not realize that the AHCA file contained additional information. Specifically, it appears from the AHCA file that AHCA has not determined whether Millennium's Plan of Correction is acceptable, and instead, on July 23, 2012, AHCA forwarded the case file to the Florida Attorney General for review. (Doc. No. 388). There is no evidence before the Court regarding whether the Florida Attorney General is going to respond to Millennium's provision of free POCT cups in any way.

Given the state of the AHCA proceedings, it is impossible to determine whether an investigation is ongoing or whether the matter is closed. As such, the Court finds that the AHCA evidence does not weigh for or against the argument that Millennium's provision of free POCT cups falls within the exception to the definition of remuneration. As a result, the Court will have to determine, as a matter of law, what the exceptions encompass and whether the undisputed facts fall within the exceptions.

As previously stated, the exceptions apply to: (1) the provision of items that are used

---

[5] Pursuant to AHCA rule 59A-7.020(14)(c), AHCA recognizes an exception to the definition of a kickback for "items, devices or supplies that are for the sole purpose of" (1) "[c]ollecting, processing, storing and transporting specimens to the laboratory;" or (2) "communicating laboratory tests or results . . . between the physician . . . and the laboratory."

9

solely to collect, transport, process, or store specimens for the entity providing the item; and (2) the provision of items that are used solely to communicate the results of tests for the entity providing the item. The parties do not dispute that the POCT cups are used to collect, transport, and store the specimens for Millennium. However, the parties dispute whether the POCT cups are used **_solely_** to do the tasks outlined in the exceptions.

First, Millennium argues that the POCT cups are used solely to do the tasks outlined in the exceptions, because the test strips inside the cups are used to process the specimen and communicate the preliminary results. The Court, however, rejects this argument, because the test strips do not process the specimen *for Millennium*,[6] nor do the test strips communicate the preliminary results *for Millennium*. Millennium is completely unaware of the test results communicated by the test strips to the doctors when the communication is occurring, and as such, Millennium can hardly argue that the test strips are communicating the test results for Millennium.

Second, Millennium argues that the word "solely" in the exceptions actually means "primarily" and argues that a device falls within the exceptions when the device's primary purpose is to collect a specimen, and the device has little or no economic value to a doctor independent of the laboratory testing service that the doctor is ordering. Millennium bases this argument on the Center for Medicare and Medicaid Services' ("CMS") comments regarding the exceptions. Specifically, Millennium points to the following 2001 statement:

---

[6]In fact, during the hearing, Millennium provided a hand-out to the Court, in which Millennium states on page 26 that "the test strip, *without the cup*, can never be part of Millennium's processing of the urine specimen." Accordingly, Millennium cannot argue that the test strips process the specimen for Millennium.

> [W]e believe the Congress intended to include in this section items, supplies, and devices of low value, such as single use needles, vials, and specimen cups, that are primarily provided by laboratories to physicians to ensure proper collection of specimens for processing at the laboratory and that have little, if any, independent economic value to the physicians who receive them.

(Doc. No. 330-34, p.93: 66 Fed. Reg. 856, 947).

The Court is not persuaded by Millennium's argument. For example, in 1998, CMS stated the following:

> In order for . . . devices to meet the statutory requirement [the first exception], they must be used *solely* to collect, transport, process, or store the specimens for the laboratory . . . that provided the . . . devices. We interpret "solely" in this context to mean that these items are used solely for the purposes listed in the statute . . . .We do not believe that an item or device meets this requirement if it is used for any purpose besides these.

(Doc. No. 330-33, p.936-37: 63 Fed. Reg. 1659, 1693-94). Thus, because the POCT cups can be used for purposes beyond collecting, transporting, and storing the specimens—because they conduct a preliminary POC test and provide a preliminary result—the POCT cups do not fall within the statutory exceptions. Other statements by CMS in different scenarios support this conclusion.

With regard to the provision of free sterile gloves, which CMS characterizes as "essential to the specimen collection process," CMS has stated that they do not fall within the exception because the gloves' main function is to prevent infection or contamination. (Doc. No. 330-34, p.94: 66 Fed. Reg. 856, 948). Likewise, CMS has noted that the Office of Inspector General has stated that while a laboratory's provision of a free phlebotomist to collect specimens might be permissible, the arrangement would become problematic if the phlebotomist performed any clerical or medical duties that were not directly related to the collection of specimens. (Doc. No.

330-34, p.94: 66 Fed. Reg. 856, 948). The Court reads these comments as supporting the conclusion that if the provision of the free device provides any additional benefit to the doctor, the device will not fall within the exceptions to the definition of remuneration. In the instant case, the test strips in the POCT cups test the specimen and provide a preliminary test result, which this Court concludes removes the POCT cups from the exceptions to the definition of remuneration. Accordingly, the Court concludes that the POCT cups do not fall within the exceptions to the definition of remuneration under the Stark Law.

### 3. Conclusion regarding Remuneration

Based on the above, the Court concludes that Millennium's provision of free POCT cups is remuneration under the Stark Law when the doctors could not bill for the POC testing done using a POCT cup for reasons beyond their agreement with Millennium (such as, because they were billing for chemical analyzer testing of the same specimen). However, to the extent that the doctors could bill for the POC testing done using a POCT cup and agreed to forego the opportunity to bill for it, the Court concludes that the jury must determine whether Millennium's provision of free POCT cups under those circumstances constitutes remuneration under the Stark Law.

### B. AKS

Ameritox also argues that it is entitled to summary judgment on its contention that Millennium's provision of free POCT cups to doctors violates the AKS. The AKS prohibits healthcare providers from knowingly and willfully offering to pay any remuneration—directly or indirectly, overtly or covertly, in cash or in kind—to induce a doctor to refer a patient for services covered under Medicare or Medicaid. See Tenet, 2013 WL 1289260, at *1; 42 U.S.C.

§ 1320a-7b(b)(2). The civil counterpart of the AKS defines remuneration as including "transfers of items or services for free or for other than fair market value." 42 U.S.C. § 1320a-7a(i)(6). Unlike the Stark Law, the AKS does not contain exceptions to the broad definition of remuneration. The parties dispute whether Millennium's provision of free POCT cups falls within the broad definition of remuneration under the AKS.

The Court concludes that for the same reasons the POCT cups may constitute remuneration under the Stark Law, the cups may constitute remuneration under the AKS. Therefore, Millennium's provision of free POCT cups is remuneration under the AKS when the doctors could not bill for the POC testing done using a POCT cup for reasons beyond their agreement with Millennium (such as, because they were billing for chemical analyzer testing of the same specimen). However, to the extent that the doctors could bill for the POC testing done using a POCT cup and agreed to forego the opportunity to bill for it, the Court concludes that the jury must determine whether Millennium's provision of free POCT cups under those circumstances constitutes remuneration under the AKS.

## IV. Conclusion

Based on the above, it is ORDERED AND ADJUDGED that Ameritox's Motion for Partial Summary Judgment (Doc. No. 337-1), to the extent that the Court deferred ruling, is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court concludes that Millennium's provision of free POCT cups constitutes remuneration under the Stark Law and AKS when the doctors could not bill for the POC testing done using a POCT cup for reasons beyond their agreement with Millennium (such as, because they were billing for chemical analyzer testing of the same specimen). Otherwise, the motion is **DENIED**, and the jury will determine whether Millennium's provision of free POCT cups to doctors who

could bill for the POC testing done using a POCT cup and agreed not to bill for it constitutes remuneration under the Stark Law and AKS.

      **DONE AND ORDERED** at Tampa, Florida, this 5th day of May, 2014.

                                            */s/ Susan C. Bucklew*
                                            SUSAN C. BUCKLEW
                                            United States District Judge

Copies to: All parties and Counsel of Record