**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| AMERITOX, LTD., ) | |
| ) | |
| Plaintiff/Counter-defendant, ) | |
| ) | |
| v. ) | Case No.: 8:11-cv-00775-SCB-TBM |
| ) | |
| MILLENNIUM LABORATORIES, INC., ) | |
| ) | |
| Defendant/Counter-claimant. ) | |
| _____ ) | |

**MILLENNIUM LABORATORIES, INC.'S MOTION TO BIFURCATE
LIABILITY AND DAMAGES AT TRIAL AND MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

      A.      Ameritox's Claims Are Based Upon Several Categories Of Challenged Conduct ................................................................................................3

      B.      Dr. Cantor's Damages Model Is Premised On Only Three Categories Of Challenged Conduct ................................................................................................4

      C.      This Court Held That Dr. Cantor's Damages Allocation Was Unreliable, And Precluded Her From Offering Any Opinion As To The Allocation Of Damages Among Challenged Conduct ......................................5

ARGUMENT ...............................................................................................................................5

I.      THIS COURT SHOULD EXERCISE ITS DISCRETION TO BIFURCATE THE ISSUES OF LIABILITY AND DAMAGES AT TRIAL ..........................................5

II.     BIFURCATION OF LIABILITY AND DAMAGES IS NECESSARY IN LIGHT OF THE SCOPE OF AMERITOX'S CLAIMS AND OF THE COURT'S RECENT ORDER EXCLUDING DR. CANTOR FROM ALLOCATING DAMAGES ..................................................................................................8

      A.      Bifurcation Is Necessary To Avoid Serious Prejudice To Millennium ...................8

      B.      Bifurcation Furthers Efficiency And Economy ......................................................10

      C.      Bifurcation Furthers Convenience ...........................................................................12

CONCLUSION ............................................................................................................................12

### MOTION TO BIFURCATE LIABILITY AND DAMAGES AT TRIAL

Pursuant to Federal Rule of Civil Procedure 42(b), and as a result of (1) Ameritox's recently announced intention to pursue the broadest possible scope of state law claims, and (2) this Court's recent Order dated May 5, 2014 (Doc. No. 448) ("5/5/14 Order"), Defendant Millennium Laboratories, Inc. respectfully moves to bifurcate liability and damages at trial because presenting each of those issues in separate, successive stages will avoid prejudice, further economy, and further convenience as provided in Rule 42(b).

### PRELIMINARY STATEMENT

Ameritox has made explicit its intention to pursue a sweepingly broad set of some eleven challenged practices under its state law claims. (Pl. Ameritox's Mem. Regarding Court's Apr. 28, 2014 Order Seeking Clarification, filed Apr. 30, 2014, at 6-7 (Doc. No. 429) ("Ameritox's 4/30/14 Mem.").) Yet Ameritox's <u>sole</u> damages expert, Dr. Robin Cantor, based her opinion only on <u>three</u> of the eleven categories of alleged misconduct: "(1) Millennium's provision of free POCT cups to doctors; (2) Millennium's arrangement of chemical analyzers at below-market pricing; and (3) Millennium's revenue model that encourages doctors to perform revenue-based testing." (5/5/14 Order at 2.) Although this Court has allowed Dr. Cantor to opine as to the total amount of purported damages caused in the aggregate by that challenged conduct, "Dr. Cantor <u>cannot</u> provide any opinion regarding an <u>allocation</u> of damages or disgorgement amounts to the different challenged conduct" because her allocation methodology is "unreliable."  (<u>Id.</u> at 8 (emphasis added).)  In light of that holding, this Court should exercise its broad authority under Rule 42(b) to bifurcate the issues of liability and damages at trial, requiring Ameritox to prevail on

liability for each of the three categories of challenged conduct, before it can present the damages testimony of Dr. Cantor. Specifically, simple bifurcation between liability and damages is appropriate here for the following reasons, any one of which is sufficient on its own to warrant bifurcation:

<u>First</u>, bifurcation will avoid serious prejudice to Millennium, without prejudicing Ameritox. For instance, if the jury finds that Millennium is liable for only one of three categories of challenged conduct underlying Dr. Cantor's damages opinion, the jury might improperly attempt to allocate an amount of damages to that particular conduct where no evidence of allocation exists in the trial record. Even worse, absent any evidence about allocation, the jury might feel pressure to award Ameritox with the total amount of damages purportedly caused by all three categories of challenged conduct, even if it were to find that Millennium was not liable for all three categories of challenged conduct. Bifurcation would avoid this threat of unfair, speculative damages, which is compounded because of Ameritox's strategic decision to attempt to bloody Millennium by putting on proof of practices that Ameritox cannot show caused it any harm.

<u>Second</u>, bifurcation will further expedition and economy in this case. If the jury finds no liability under any challenged conduct, then Ameritox's case ends there. Similarly, if the jury finds liability for a type of challenged conduct distinct from the three categories addressed in Dr. Cantor's opinion, then Dr. Cantor would not need to testify about damages at all because her opinion would be irrelevant. Also, if the jury finds liability for only one or two of the three categories of challenged conduct addressed in Dr. Cantor's opinion, then Dr. Cantor should not be allowed to testify as to her total damages amount

because she cannot offer the jury any allocation methodology. If, however, the jury finds liability for all three categories of challenged conduct in Dr. Cantor's opinion, then Ameritox could proceed to the damages stage.

<u>Third</u>, bifurcation is convenient under the circumstances because it will allow this Court and the jury to focus first on the liability issues, without having to simultaneously consider the potentially irrelevant (and deeply flawed) damages opinion of Dr. Cantor.

## STATEMENT OF FACTS

### A. Ameritox's Claims Are Based Upon Several Categories Of Challenged Conduct

Ameritox recently submitted to this Court that its remaining non-Lanham Act claims are based on the following categories of challenged conduct and allegedly false or misleading representations about that conduct (we have italicized those addressed in Dr. Cantor's damages calculation):

- *Free Test Cups – the cornerstone of its continued and on-going scheme*
- Neglecting to collect deductibles and co-payments from customers
- Billing letter representations (re: Millennium's deductible and co-pay waiver policy)
- Press release representations (re: Millennium's deductible and co-pay waiver policy)
- *Revenue Model encouraging HCP's to test patients for profits, not medical necessity*
- Free CLIA waiver assistance
- Free billing advice
- Free reimbursement services via CodeMap
- *Preferential pricing on chemical analyzers and related supplies*
- Representations that preferential pricing was legal

3

- Representations that free Cup Agreements were legal

(Ameritox's 4/30/14 Mem. at 6-7 (italics added).)

### B. Dr. Cantor's Damages Model Is Premised On Only Three Categories Of Challenged Conduct

Dr. Cantor's damages model purports to estimate state law damages associated with <u>only</u> three categories of challenged conduct asserted by Ameritox: "(1) Millennium's provision of free POCT cups to doctors; (2) Millennium's arrangement of chemical analyzers at below-market pricing; and (3) Millennium's revenue model that encourages doctors to perform revenue-based testing." (5/5/14 Order at 2.)  The state law estimate, of $18.9 million in "Lost Sales" and $41.7 million in "Disgorgement," is based only on Dr. Cantor's "Composite Benchmark Model," which this Court has stated "estimates profits from 2010 through 2012 based on Medicare data" and purportedly shows "damages from all three types of the challenged conduct, not just the revenue model."  (<u>Id.</u> at 5.)

This Court agreed with Millennium that Dr. Cantor's "opinions are based on Millennium's *conduct* rather than its *representations*."  (5/5/14 Order at 8 ("Ameritox has not shown that Dr. Cantor's opinion is based on Millennium's representations.").)  Thus, her estimate does not embrace <u>any</u> of the representations that Ameritox intends to pursue in its state law claims.  Further, Dr. Cantor's report is completely silent about Millennium's challenged conduct of matters such as "[n]eglecting to collect deductibles and co-payments from customers." (Ameritox's 4/30/14 Mem. at 6.)

4

> C.  **This Court Held That Dr. Cantor's Damages Allocation Was Unreliable, And Precluded Her From Offering Any Opinion As To The Allocation Of Damages Among Challenged Conduct**

This Court determined that Dr. Cantor's allocation methodology was unreliable and, therefore, precluded her from offering any testimony regarding the allocation of damages purportedly flowing from each of the three categories of challenged conduct underlying her opinion:

> [T]he Court is quite troubled regarding Dr. Cantor's allocation of damages in the Composite Benchmark Model, which she allocates entirely based on the information contained in salesforce.com. . . . There is no scientific or other reliable basis for simply assuming that every reason given for leaving Ameritox was an equal reason for the doctor switching labs. . . . Given that there is no reason to assume that all reasons given by the doctors were equally important to the doctor's decision to leave Ameritox, the Court finds that a damages allocation based simply on the reasons given equates to unreliable methodology. Therefore, to this extent, the Court concludes that Dr. Cantor cannot provide any opinion regarding an allocation of damages or disgorgement amounts to the different challenged conduct.

(5/5/14 Order at 7-8.)

## ARGUMENT

### I. THIS COURT SHOULD EXERCISE ITS DISCRETION TO BIFURCATE THE ISSUES OF LIABILITY AND DAMAGES AT TRIAL

"On its face, Rule 42(b) encourages the severing of issues for trial, guaranteeing trial judges optimum flexibility in structuring litigation with an eye toward providing a fair and efficient remedy." Simon v. Philip Morris Inc., 200 F.R.D. 21, 27 (E.D.N.Y. 2001) (Weinstein, J.) (describing the history of bifurcation generally).  As numerous decisions of the Eleventh Circuit make clear, this Court has broad discretion under Rule 42(b) to order a separate trial on any issue "[f]or convenience, to avoid prejudice, or to

5

expedite and economize."[1]  Fed. R. Civ. P. 42(b); see, e.g., Circle Y Constr., Inc. v. WRH Realty Servs., Inc., 427 F. App'x 772, 777 (11th Cir. 2011) (affirming district court's discretion "to bifurcate proceedings and to hold a trial on attorney's fees after a trial on liability"); Harrington v. Cleburne County Bd. of Educ., 251 F.3d 935, 938 (11th Cir. 2001) (per curiam) (affirming district court's "broad discretion" to order separate trials of claims based on gender discrimination and race discrimination); Swofford v. B&W, Inc., 336 F.2d 406, 415 (5th Cir. 1964) (affirming district court's discretion to order separate trials on liability and damages in a patent case); Fid. & Cas. Co. of N.Y. v. Mills, 319 F.2d 63, 63-64 (5th Cir. 1963) (per curiam) (affirming district court's "broad discretion" to order separate trials for various claims and issues in a tort action); Rossano v. Blue Plate Foods, Inc., 314 F.2d 174, 176-77 (5th Cir. 1963) (affirming district court's "broad discretion" to order a tort action "to go to the jury on the limited issue of agency, leaving other issues of proximate cause, injury, and damages for later determination"); Nettles v. Gen. Accident Fire & Life Assurance Corp., 234 F.2d 243, 247 (5th Cir. 1956) (affirming district court's discretion "in furtherance of convenience" to "try[] the issue of liability separate from the issue of damages" in a tort action).[2]

---

[1]   Fed. R. Civ. P. 42(b) states in its entirety: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party clams.  When ordering a separate trial, the court must preserve any federal right to a jury trial." (Emphasis added.)  See also Simon, 200 F.R.D. at 27 ("The three allowable grounds for a bifurcation decision – furthering convenience, avoiding prejudice and furthering expedition and economy – are set out in the alternative, so that the presence of any one is sufficient to sustain such an order.").

[2]   See generally Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . , as that court existed on September 30, 1981, handed down by that court prior to the close of

*(cont'd)*

This Court has previously exercised that broad discretion under Rule 42(b) to order separate trials where appropriate under the circumstances. See, e.g., Foltz v. City of Largo, No. 8:10-cv-759-T-24-EAJ, 2011 WL 1690010, at *2-3 (M.D. Fla. May 3, 2011) (Bucklew, J.) (ordering two separate, back-to-back trials with the same jury for plaintiff's (i) § 1983 claim against a police officer and (ii) other claims against the municipality); Vondriska v. Cugno, No. 8:07-cv-1322-T-24-TGW, 2010 WL 3245426, at *2 (M.D. Fla. Aug. 17, 2010) (Bucklew, J.) (ordering a separate trial on the threshold issue of whether defendant was an "employer" under the Fair Labor Standards Act).

Also, federal district courts in Florida routinely bifurcate issues of liability and damages, as requested in this motion. See, e.g., Blanco v. Capform, Inc., No. 11–23508–Civ., 2013 WL 118171, at *4 (S.D. Fla. Jan. 9, 2013) (ordering under Rule 42(b) separate trials on liability and damages in a tort action); Romero v. Fla. Power & Light Co., No. 6:09–cv–1401–Orl–36GJK, 2012 WL 1970125, at *6-7 (M.D. Fla. June 1, 2012) (ordering under Rule 42(b) separate trials on liability and damages in a Fair Labor Standards Act action); Ross v. First Liberty Ins. Corp., No. 8:11–cv–983–T–33EAJ, 2011 WL 2784321, at *2 (M.D. Fla. July 15, 2011) (ordering under Rule 42(b) separate trials on liability and damages for a bad faith claim); see also Simon, 200 F.R.D. at 31-33 (collecting cases from across the nation that severed liability issues from damages).

---

*(cont'd from previous page)*
business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

## II. BIFURCATION OF LIABILITY AND DAMAGES IS NECESSARY IN LIGHT OF THE SCOPE OF AMERITOX'S CLAIMS AND OF THE COURT'S RECENT ORDER EXCLUDING DR. CANTOR FROM ALLOCATING DAMAGES

### A. Bifurcation Is Necessary To Avoid Serious Prejudice To Millennium

This Court should order bifurcation of liability and damages because doing so is required to avoid serious prejudice to Millennium, and will not prejudice Ameritox.  Given that Ameritox's remaining claims are purportedly based on <u>eleven</u> categories of challenged conduct and alleged representations about that conduct (Ameritox's 4/30/14 Mem. at 6-7), that Dr. Cantor's damages opinion is based on only <u>three</u> of those categories of challenged conduct (5/5/14 Order at 2), and that Dr. Cantor can provide <u>zero</u> testimony about the allocation of damages among the challenged conduct (<u>id.</u> at 7-8), the risk of jury confusion or nullification is high if the jury is required to simultaneously consider evidence of liability and damages.

For example, if the jury finds that Millennium is liable for only one of the three categories of challenged conduct underlying Dr. Cantor's damages opinion, the jury might improperly attempt to allocate an amount of damages to that particular conduct where no evidence of allocation exists in the trial record.  Or, absent any evidence as to allocation, the jury might feel pressure to award Ameritox with the total amount of damages purportedly caused by all three categories of challenged conduct, even if it were to find that Millennium was not liable for all three categories of challenged conduct.  Put another way, imagine that the jury finds liability based on Millennium's "[n]eglecting to collect deductibles and co-payments from customers."  (Ameritox's 4/30/14 Mem. at 6.)  Dr. Cantor's damages model does not address that category of challenged conduct at all.  A jury might be tempted under

8

such circumstances -- whether on purpose or by inadvertence -- to attribute some or all of Dr. Cantor's total damages figure to that conduct, even though there is no basis in Dr. Cantor's model to do such a thing. The simple bifurcation of liability and damages would avoid this very serious threat of an unfair, speculative award of damages.

Further, Ameritox cannot credibly argue that bifurcation would unfairly prejudice its case. As the former Fifth Circuit explained in Rossano v. Blue Plate Foods (which affirmed the district court's order to bifurcate the issue of agency from the issues of proximate cause, injury, and damages):

> It is difficult to grasp, and we cannot adopt, the argument of [Plaintiff] that he was prejudiced here in some way. The result of the trial on the merits of his claiming agency was not preordained by the mere fact of trying it alone. As it developed, the issue was decided against him, but what is the harm in ending the fray in one battle instead of two or more? [Plaintiff] would have been not one with more entitled to a verdict merely because lengthy additional testimony might have been taken on the separate and irrelevant issues of negligence and damages. In this instance it seems to us the Court was well within its discretionary bounds in limiting the action.

Rossano, 314 F.2d at 176-77. Likewise, Millennium's potential liability is not preordained by the mere fact of trying it alone, and Ameritox cannot contend that it would be more entitled to a verdict on liability merely because lengthy additional testimony by Dr. Cantor might have been taken on the separate and irrelevant issue of damages.

"Separate trials do not, moreover, prevent a jury from awarding" Ameritox "relief on [its] claims if [it] has the evidence to support them." Harrington, 251 F.3d at 938. At most, Ameritox might "los[e] whatever marginal possibility [it] had of an erroneous verdict in [its] favor, because of jury confusion, on weak claims." Id. As the Eleventh

9

Circuit has declared: "That is not legitimate prejudice." Id. (affirming district court's order to bifurcate gender and race discrimination claims).

Accordingly, this Court should order bifurcation of liability and damages because it will prevent serious prejudice to Millennium, without prejudicing Ameritox.

### B. Bifurcation Furthers Efficiency And Economy

This Court should order bifurcation of liability and damages for the additional and independent reason that doing so will further expedition and economy in this case. See, e.g., Foltz, 2011 WL 1690010, at *3 (holding in part that "bifurcation is warranted . . . because of the possibility of conserving judicial resources if the second trial becomes unnecessary"). If the jury finds no liability under any of the eleven categories of challenged conduct and alleged representations listed in Ameritox's 4/30/14 Memorandum, then Ameritox's case ends there. No additional resources would need to be expended to present, cross-examine, and consider the complex damages testimony of Dr. Cantor.

Similarly, if the jury finds liability based on the categories of challenged conduct or alleged representations that were not addressed in Dr. Cantor's opinion, then Dr. Cantor's testimony would be unnecessary and irrelevant. For example, Dr. Cantor's damages model does not address Millennium's "[n]eglecting to collect deductibles and co-payments from customers." (Ameritox's 4/30/14 Mem. at 6; see also 5/5/14 Order at 2.) If the jury finds that Millennium is liable on the basis of that challenged conduct, then Dr. Cantor's testimony would not be required because her damages model -- which is based on three other categories of challenged conduct -- would be irrelevant. A finding of liability based upon Millennium's alleged representations would likewise render Dr. Cantor's testimony irrelevant

and unnecessary, because those representations were not part of Dr. Cantor's damages model either.  (See 5/5/14 Order at 8.)

Even if the jury finds liability for one or two of the three categories of challenged conduct addressed in Dr. Cantor's opinion, Dr. Cantor should not be permitted to testify as to her total damages amount, because she cannot offer the jury any allocation methodology.  (See 5/5/14 Order at 7-8.)  Jurors would have no evidence on which they could rely to separate alleged damages flowing from legal conduct versus illegal conduct.

Finally, if the jury were to find liability for all three categories of challenged conduct in Dr. Cantor's opinion, then Ameritox could hypothetically proceed to the damages stage.  That stage would require significant resources from all involved.  Ameritox would present Dr. Cantor's testimony to the jury, that testimony would be subject to vigorous cross-examination by Millennium as contemplated by this Court's 5/5/14 Order at 4-7, the jury would consider that testimony and deliberate, and this Court would preside over the trial.

Ameritox cannot credibly argue under the circumstances of this case that bifurcation of liability and damages would be inefficient here.  As this Court reasoned in another bifurcation case, any purported hardship of a bifurcated trial, "would not be materially greater than that of a single trial."  Foltz, 2011 WL 1690010, at *3 (quoting Carson v. City of Syracuse, No. 92-CV-777, 1993 WL 260676, at *7 (N.D.N.Y. July 7, 1993)) (internal quotation marks omitted).  "[I]n the event of an adverse verdict for" Ameritox on "liability, the bifurcation would actually save" Ameritox "(albeit to their dismay) the burden of having to litigate" damages.  Id.

11

### C.     Bifurcation Furthers Convenience

This Court should order bifurcation of liability and damages for the additional and independent reason that doing so would further convenience. As the Eleventh Circuit explained:

> Fed. R. Civ. P. 42(b) confers broad discretion on the district court in this area, permitting bifurcation merely "in furtherance of convenience." That is not a high standard, and the district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials.

Harrington, 251 F.3d at 938. Here, bifurcation will allow this Court, the parties, and the jury to focus on the liability issues first, without having to simultaneously address and consider the complex, contentious, and potentially irrelevant damages opinion of Dr. Cantor. The need to separate and clarify at trial the eleven purported categories of challenged conduct and alleged representations underlying Ameritox's claims *vis-a-vis* the three categories of challenged conduct underlying the damages model of Dr. Cantor also warrants bifurcation. As does the need to carefully clarify at trial that Dr. Cantor's testimony does not (and cannot) address the allocation of damages.

### CONCLUSION

For the foregoing reasons, Millennium respectfully requests that the Court enter an order bifurcating the issues of liability and damages at trial.

## **LOCAL RULE 3.01(G) CERTIFICATION**

Undersigned counsel certifies that they contacted counsel for Ameritox but that counsel could not reach agreement on this issue.

Dated:   Boston, Massachusetts
        May 8, 2014

Respectfully submitted,

/s/ Peter Simshauser
James R. Carroll (admitted *pro hac vice*)
Peter Simshauser (admitted *pro hac vice*)
Christopher A. Lisy (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800
James.Carroll@skadden.com
Peter.Simshauser@skadden.com
Christopher.Lisy@skadden.com

--and--

Lance Etcheverry (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
(213) 687-5000
Lance.Etcheverry@skadden.com

Kevin J. Napper (FBN 656062)
Amanda Arnold Sansone (FBN 587311)
CARLTON FIELDS, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
(813) 223-7000
knapper@carltonfields.com
asansone@carltonfields.com

*Counsel for Defendant/Counter-claimant*
*Millennium Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 8, 2014, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will provide electronic notification to all counsel of record.

Dated:  May 8, 2014          /s/ Peter Simshauser
                   Peter Simshauser