UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERITOX, LTD.,

     Plaintiff,

v.                                  Case No.: 8:11-cv-775-T-24-TBM

MILLENNIUM LABORATORIES, INC.,

     Defendant.
_____/

**ORDER**

This cause comes before the Court on Ameritox's Motion for a Permanent Injunction. (Doc. No. 662).  Millennium opposes the motion.  (Doc. No. 665).  As explained below, the motion is denied.

**I.  Background**

Ameritox and Millennium are clinical laboratories that screen urine specimens for the presence of drugs.  They are competitors in the industry and have been engaged in extensive litigation for several years.

Ameritox asserted six claims against Millennium that went to trial:[1] (1) violation of Florida's Deceptive and Unfair Trade Practices Act (Counts II and III), (2) unfair competition under California law (Count IV), (3) unfair competition under New Hampshire law (Count V),

---

[1]Millennium asserted five counterclaims against Ameritox that also  went to trail: (1) violation of Florida's Deceptive and Unfair Trade Practices Act (Count I); (2) violation of California's Unfair Competition Law (Count II); (3) violation of New York's Consumer Protection from Deceptive Acts and Practices Law (Count V); (4) common law unfair competition in Florida, Texas and Washington (Count VI); and (5) common law tortious interference with business relationships in Florida, California, New York, Tennessee, Texas, Washington, and Oregon (Count VII).  During the trial, Millennium withdrew its request for damages for these claims and only sought injunctive relief.  The jury found in favor of Ameritox on all of Millennium's counterclaims.  (Doc. No. 620).

(4) common law tortious interference with business relationships in Arizona, Florida, California, New Hampshire, Tennessee, and Texas (Count VI), and (5) common law unfair competition in Arizona, Florida, New Hampshire, and Texas (Count VII).[2]  (Doc. No. 429).  The jury found in favor of Ameritox on the following claims: (1) common law tortious interference with business relationships in Florida, Tennessee, and Texas (Count VI), and (2) common law unfair competition in Florida and Texas (Count VII).  (Doc. No. 620).  The jury or the Court found in favor of Millennium on all of Ameritox's other claims, including the claims of common law tortious interference with business relationships in Arizona, California, and New Hampshire, as well as the claims of common law unfair competition in Arizona and New Hampshire.[3]  (Doc. No. 620, 667).

Ameritox's claim of common law tortious interference with business relationships, as well as Ameritox's claim of  common law unfair competition, were based on Millennium's provision of free POCT cups under cup agreements in exchange for referrals, which Ameritox contended violated the Anti-Kickback Statute ("AKS") (42 U.S.C. § 1320a-7b(b)(2)) and Stark Law (42 U.S.C. § 1395nn).  Prior to trial, in an order dated May 5, 2014, the Court stated the following:

> [T]o the extent that the doctors could not bill for the POC testing

---

[2]The parties entered into a consent order resolving Ameritox's Lanham Act claim (Count I) prior to trial.  (Doc. No. 561).

[3]The Court found in favor of Millennium on Count II (Ameritox's claim for injunctive relief under Florida's Deceptive and Unfair Trade Practices Act) and Count IV (Ameritox's claim under the California Business and Professions Code).  (Doc. No. 667).  Both of these claims sought injunctive relief, and as such, these claims were not specifically considered by the jury.

> done using a POCT cup for other reasons (such as, because they were using chemical analyzers to test the specimens), then Millennium's provision of free POCT cups did provide a valuable benefit to the doctors in the form of the free preliminary test results that the doctors could not have obtained without purchasing a POCT cup. In this situation, the doctors obtained a preliminary test result without having to pay for the POCT cup and without giving up the opportunity to bill for the POC testing done using a POCT cup. Therefore, in this situation, Millennium's provision of free POCT cups constitutes remuneration under the Stark Law. . . . [Additionally,] [t]he Court concludes that for the same reasons the POCT cups may constitute remuneration under the Stark Law, the cups may constitute remuneration under the AKS. Therefore, Millennium's provision of free POCT cups is remuneration under the AKS when the doctors could not bill for the POC testing done using a POCT cup for reasons beyond their agreement with Millennium (such as, because they were billing for chemical analyzer testing of the same specimen).

(Doc. No. 446). After this ruling, Millennium cancelled its free POCT cup agreements with its customers that had chemical analyzers, as well as its customers that had split cup agreements. (Doc. No. 640). However, Millennium did not cancel its free POCT cup agreements with its customers that could bill patients for the POC testing but agreed to forgo such billing due to entering into a free POCT cup agreement.

The jury decided the issue of whether Millennium's provision of free POCT cups under cup agreements in exchange for referrals was a violation of the AKS and Stark Law when the doctors could bill patients for the POC testing but agreed to forgo such billing due to entering into a free POCT cup agreement. On June 16, 2014, the jury concluded that such conduct was a violation of the AKS and Stark Law. (Doc. No. 620). Further, the jury found that such conduct was sufficient to support Ameritox's claim of tortious interference with business relationships in Florida, Tennessee, and Texas, as well as Ameritox's claim of common law unfair competition in Florida and Texas. (Doc. No. 620). As a result, by June 17, 2014, Millennium suspended all

of its remaining free cup agreements on a nationwide basis, pending further court and/or

appellate review.  (Doc. No. 640).

## II.  Motion for Permanent Injunction

On July 28, 2014, Ameritox filed the instant motion for a permanent injunction,

prohibiting Millennium from providing free POCT cups under cup agreements anywhere in this

country, because such conduct violates the AKS and Stark Law.  Millennium opposes the

motion, arguing that: (1) a permanent injunction is unnecessary because Millennium has already

voluntarily suspended its free POCT cup agreements; and (2) the Court does not have the

authority to issue an injunction to restrain violations of the AKS and Stark Law, because those

statutes do not provide a private right of action that can afford such relief to Ameritox.  As

explained below, the Court agrees with Millennium that an injunction should not be issued.

Neither the Stark Law nor the AKS provides a private right of action, and as such,

Ameritox used the violations of the Stark Law and AKS as the basis for its tortious interference

and unfair competition claims.  See U.S. v. Halifax Hospital Medical Center, 2014 WL 68603, at

*4, *4 n.2 (M.D. Fla. Jan. 8, 2014); U.S. ex rel. Osheroff v. Tenet Healthcare Corp., 2013 WL

1289260, at *1 (S.D. Fla. Mar. 27, 2013).  However, Ameritox's request for a nationwide

injunction is based on Millennium's free POCT cup program violating the AKS and Stark Law.

Because there is no private right of action under the Stark Law or AKS, the Court concludes that

it cannot provide injunctive relief to Ameritox in order to prevent future violations of those

statutes.  See West Allis Memorial Hospital v. Bowen, 852 F.2d 251, 254-55 (7th Cir.

1988)(concluding that the lower court did not err in denying an injunction regarding an alleged

violation of the Stark Law, because the plaintiff did not have standing to pursue such relief given

that the Stark Law does not provide a private right of action).

Furthermore, to the extent that Ameritox seeks injunctive relief due to it limited success on its tortious interference and unfair competition claims, the Court finds that *nationwide* relief is clearly not warranted, given that the jury was not asked to find that Ameritox sustained a nationwide injury.  Furthermore, the jury rejected Ameritox's contention that Ameritox was injured in Arizona, California, or New Hampshire by Millennium's free POCT cup agreements. (Doc. No. 620).

Finally, to the extent that Ameritox seeks to enjoin Millennium's free POCT cup program in Florida, Tennessee, and Texas (the states in which Ameritox successfully challenged Millennium's free POCT cup program), the Court finds that injunctive relief is not warranted.  In order to receive a permanent injunction, Ameritox must show: (1) actual success on the merits of its tortious interference and unfair competition claims, (2) irreparable injury will occur unless the injunction is issued, (3) the threatened injury to Ameritox outweighs whatever damage the proposed injunction may cause Millennium, and (4) if issued, the injunction would not be adverse to the public interest.  See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004).  Ameritox, however, has not shown that irreparable injury will occur unless the injunction is issued.

Millennium has voluntarily suspended its free POCT cup program on a nationwide basis (it was entirely suspended the day after the jury verdict, which occurred more than a month prior to the filing of the instant motion for injunctive relief), and there is no indication that Millennium will restart the program absent a court ruling that it is permissible to do so.  As such, there is no evidence that Ameritox is currently facing any irreparable harm.

5

The Court is mindful that it "has equitable discretion about whether to issue an injunction after the [unlawful] conduct has ceased." Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC, 684 F.3d 1211, 1220 (11th Cir. 2012).  However, the Court concludes that given Millennium's immediate, voluntary cessation of its free POCT cup program once the Court and jury made its findings, and given Millennium's statements to the Court that it will not restart the program absent a court ruling that it is permissible to do so, the Court concludes that it is not likely that Millennium will restart its free POCT cup program.  Furthermore, Millennium is already facing over $11 million in compensatory and punitive damages for its prior conduct of engaging in its free POCT cup program in Florida, Texas, and Tennessee, and that large award should be a sufficient deterrent for Millennium if it were to consider restarting its free POCT cup program in those states.  As such, the Court concludes that a permanent injunction in Florida, Tennessee, and Texas is not necessary to protect Ameritox from irreparable harm.

**III.  Conclusion**

Accordingly, it is ORDERED ADJUDGED that Ameritox's Motion for a Permanent Injunction (Doc. No. 662) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 15th day of September, 2014.

SUSAN C. BUCKLEW
United States District Judge

Copies to: All parties and Counsel of Record

6